## CLEAVELAND *v.* RICHARDSON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF ILLINOIS.

No. 125.　Argued November 21, 1889. — Decided December 9, 1889.

A creditor made a compromise with his debtor for sixty cents on the dollar,
and subsequently sued him to recover the balance of the claim, on the
ground of fraudulent action by the debtor in obtaining the compromise,
and that the debtor had violated his agreement not to voluntarily pay any
other creditor more than sixty per cent: *Held*, that he could not recover
because —
(1) There was no breach of good faith on the part of the debtor, and no
misrepresentation as to his assets, and no false answer made by
him to any question;
(2) The payment of more than sixty per cent to another creditor having
been made when the latter had an attachment suit against the
debtor, which was about to be tried, was not a voluntary payment
within the meaning of the agreement.

THIS was an action of assumpsit, brought in the Circuit
Court of the United States for the Northern District of Illinois,
in September, 1884, by George C. Richardson, Charles S.
Smith, George K. Guild, Ralph L. Cutter and Harrison Gard-
ner, partners composing the firm of George C. Richardson &
Co., against James O. Cleaveland, Cornelius B. Cummings,
Charles W. Woodruff and Washington Libbey, partners com-
posing the firm of Cleaveland, Cummings & Woodruff.

The declaration contained the money counts, and annexed
to it is a copy of an account showing various items of merchan-
dise sold by the plaintiffs to the defendants, in August, Septem-
ber and October, 1883, amounting in debit items to $12,125.25,
with a credit item of cash, December 31, 1883, amounting to
$7275.15, leaving a balance due to the plaintiffs, on the last-
named day, of $4850.10.

The defendants were served with process and put in various
pleas, and there were replications and rejoinders, raising issues
covered by the findings of the court on the trial. The defend-
ant Woodruff having died, it was ordered that the suit proceed

against the surviving defendants. A trial before a jury was commenced, but a juror was withdrawn, and the parties duly waived a trial by jury and consented that the case be tried by the court.

The court filed special findings as follows :-

"1. James O. Cleaveland, Cornelius B. Cummings and Washington Libbey, three of the defendants, with one William F. Shelley, on the 31st of December, 1881, formed a limited copartnership under the statute of the State of Illinois in that behalf, under the name of 'Cleaveland, Cummings & Shelley,' to do a wholesale business in merchandise in Chicago, in which the said Washington Libbey was a limited partner, having put in $50,000 of capital.

"2. About the 1st of May, 1883, the said Shelley went out of the firm, and Charles W. Woodruff, the other defendant in this cause, came into the firm, which assumed the name of 'Cleaveland, Cummings & Woodruff,' and continued to do business until as hereinafter stated.

"3. Said firm of 'Cleaveland, Cummings & Woodruff' intended, as between themselves, to do business as a limited partnership, but they did not take the steps required by law to make said firm a limited partnership under the statute of Illinois in that behalf.

"4. The plaintiffs sold to the firm of Cleaveland, Cummings & Woodruff, upon the 28th, 29th and 30th of August, 1883, and upon the 14th and 15th of September, 1883, merchandise to the amount of $8064.03, payable by the said firm in sixty days from September 15th ; and on the 24th of October sold to Cleaveland, Cummings & Woodruff merchandise to the amount of $1291.83, payable in sixty days from November 1st; and the plaintiffs were also the holders of two notes of said Cleaveland, Cummings & Woodruff, dated Chicago, September 15, 1883, due in four months from the date thereof, payable to the order of the defendants and endorsed by them, one for $1347.99 and one for $1421.40, which two notes matured January 18, 1884; said several amounts aggregating $12,125.25.

"5. On the 30th of October, 1883, Washington Libbey paid

to James O. Cleaveland $1000 for his interest in the firm of Cleaveland, Cummings & Woodruff, and said James O. Cleaveland, Cornelius B. Cummings, Charles W. Woodruff and Washington Libbey signed and delivered to James O. Cleaveland an instrument in writing as follows, viz. :

"' The copartnership. heretofore existing between James O. Cleaveland, Cornelius B. Cummings, Charles W. Woodruff and Washington Libbey, under the firm name of Cleaveland, Cummings & Woodruff, has this day been dissolved by mutual consent, and such dissolution to take effect Nov. 1, 1883. All accounts and indebtedness due the late firm of Cleaveland, Cummings & Woodruff must be paid to Cummings, Woodruff & Brown, successors to Cleaveland, Cummings & Woodruff, by whom all liabilities of the late firm must be paid and said Cleaveland held harmless therefrom.

"' Dated Chicago, Illinois, Oct. 30, A.D. 1883.

"' JAMES O. CLEAVELAND.
"' C. B. CUMMINGS.
"' CHARLES W. WOODRUFF.
"' WASHINGTON LIBBEY.'

" 6. It was contemplated, October 30, 1883, that a new firm would be formed, composed of Cornelius B. Cummings, Charles W. Woodruff and Swan Brown, as general partners, and Washington Libbey, as special partner, but said firm was never formed, but the said Cleaveland supposed it was so formed when he sold out his interest to the said Libbey.

" 7. The firm of Cleaveland, Cummings & Woodruff stopped business on or before November 14, 1883. Said firm owed for borrowed money about $179,000 which was unsecured, and for merchandise about $461,000 ; and the assets of said firm were sufficient to pay the borrowed money in full and not quite sixty per cent on the dollar upon the mercantile debts. The said Washington Libbey was reputed to be a man of large wealth.

" 8. On the 14th of November, 1883, all the bills receivable, notes and accounts of Cleaveland, Cummings and Woodruff

were sold to Columbus R. Cummings for his two notes for $201,110.43, one for $110,000, which was delivered to the Union National Bank in full payment of borrowed money due by said firm to said bank. The other, for $91,110.43, was delivered to a member of said firm of Cleaveland, Cummings & Woodruff. Columbus R. Cummings was a brother of Cornelius B. Cummings, and a director in the Union National Bank, to which he had introduced said firm, and felt in honor bound to see that the bank suffered no loss.

"9. Immediately thereafter, Cleaveland, Cummings & Woodruff sent J. J. Knickerbocker, as their attorney, to New York, and proposed to the mercantile creditors of that firm to pay them sixty cents on the dollar of their respective claims. When application to the plaintiffs was made to accept sixty cents on the dollar of their claims, some had settled at that rate and some had not. The attorney of Cleaveland, Cummings & Woodruff explained the situation of the assets of Cleaveland, Cummings & Woodruff, saying that the borrowed money was to be paid in full, which would not leave enough to pay quite sixty per cent of the remaining indebtedness. Libbey's liability as a member of the firm was spoken of, when said attorney stated to the plaintiffs that he had not had opportunity to examine into the question and was not in possession of information to know whether Libbey could make a successful defence or not, but that it was a question they could investigate for themselves. One of said plaintiffs said to said attorney they had sold no goods to the defendants on the strength that Libbey was more than a special partner; that no credit had been given to the firm on the faith that Libbey sustained any other relation to it; that Libbey had lost his special capital; and that they had no desire to make him pay more. It does not appear, however, from the evidence, that the defendants, or their attorney, communicated to the plaintiffs the fact that Libbey had signed the instrument in writing referred to in the fifth finding, or that he made any statement as to Libbey's financial ability to pay the debts of said firm. The plaintiffs at first refused, but about the 29th of December, 1883, upon the receipt of the sum of

$7275.15, which was sixty per cent of their entire claim, they, by their agent, Walter M. Smith, executed and delivered to the said John J. Knickerbocker, the attorney for the defendants, at Chicago, an instrument in writing, as follows:

" ' For and in consideration of the sum of seven thousand two hundred and seventy-five and $\frac{15}{100}$ ($7275.15) dollars, to us in hand paid by John J. Knickerbocker, of Chicago, Ill., the receipt whereof is hereby acknowledged and confessed, we have sold, assigned, transferred and delivered, and do hereby sell, assign, transfer, set over and deliver to said Knickerbocker, his heirs, executors, administrators and assigns the above and foregoing claim in our favor and against the late firm of Cleaveland, Cummings & Woodruff, and all other claims and demands which we now have or might or could have against the said Cleaveland, Cummings & Woodruff, by reason of the happening of any matter or thing from the beginning of the world to the day of the date hereof, without recourse to us, and authorize and empower said Knickerbocker to sue for, collect, settle, compound and give acquittance therefor as fully as we could do in person.

" ' In witness whereof we have hereunto set our hand and seal this 29th day of December, 1883.

" ' GEORGE C. RICHARDSON & Co.,     [SEAL.]

" ' PER WALTER M. SMITH,          [SEAL.]

" Attached to said instrument are the following :

" ' Chicago, *Sept.* 15, 1883.

" ' Four months after date we promise to pay to the order of ourselves one thousand three hundred and forty-seven $\frac{99}{100}$ dollars at the Mechanics' National Bank, N.Y., value received.

" ' Due Jan'y 18, 1884.

" ' $1347.99.          CLEAVELAND, CUMMINGS & WOODRUFF.'

" (Endorsed :) ' Cleaveland, Cummings & Woodruff.'

" ' Chicago, *Sept.* 15, 1883.

" ' Four months after date we promise to pay to the order of ourselves one thousand four hundred and twenty-one dol-

lars and $\frac{41}{100}$ at the Mechanics' National Bank, N.Y., value received.

" 'Due Jan'y 18, 1884.

" '$1421.41.        CLEAVELAND, CUMMINGS & WOODRUFF.'

"(Endorsed :) 'Cleaveland, Cummings & Woodruff.'

" ' Mess. Cleaveland, Cummings and Woodruff to George C. Richardson & Co., debtors.

" '1883.

| | | | | | | |
|---|---|---|---|---|---|---|
| " ' Aug. 28. | To mdse., 60 days, | Sept. 15 | . . . . | 333 | 94 |
| " ' 29. | " " | " | . . . . | 853 | 79 |
| " ' " | " " | " | . . . . | 156 | 06 |
| " ' 30. | " " | " | . . . . | 859 | 35 |
| " ' " | " " | " | . . . . | 4783 | 65 |
| " ' Sept. 14. | " " | " | . . . . | 324 | 74 |
| " ' 15. | " " | " | . . . . | 227 | 17 |
| " ' " " | . " " | " | . . . . | 525 | 33 |
| " ' Oct. 24. | " " | Nov. 1. | . . . . | 1291 | 83 |
| | | | | 9355 | 86' |

" And Charles W. Woodruff, one of the said defendants, at the same time, and as part of the same arrangement, delivered to the said agent of the plaintiffs an instrument in writing as follows, viz. :

" ' John J. Knickerbocker.                Jesse Holdom.

" 'Knickerbocker & Holdom, attorneys-at-law, 164 La Salle St.

" ' Chicago, ———, 188–.

" ' In consideration of a compromise this day made by Messrs. Geo. C. Richardson & Co. and Messrs. Jay, Langdon & Co., of New York City, of their respective claims against the late firm of Cleaveland, Cummings & Woodruff, of Chicago, Ill., the said Cleaveland, Cummings & Woodruff stipulate and agree not to pay voluntarily to any of their creditors holding claims in excess of one thousand dollars, to exceed sixty per cent on the dollar in settlement: Providing, however, that the payment of attorneys' fees and court costs in all cases

where suits have been heretofore or may hereafter be commenced shall not be considered as an evasion or violation of this agreement.

                        " ' CLEAVELAND, CUMMINGS & WOODRUFF.

    " ' Dec. 29th, 1883.'

"10.   In April, 1884, all the mercantile debts of Cleaveland, Cummings & Woodruff had been settled at sixty cents and released except about $88,000.   The firm of Vietor & Achelis had not released their claim, but had brought a suit by attachment thereon against James O. Cleaveland, Cornelius B. Cummings, Charles W. Woodruff and Washington Libbey, which was about to be tried.   The attorney of Cleaveland, Cummings & Woodruff paid to Vietor & Achelis sixty cents on the dollar of their claim, who thereupon released their said claim; but at the same time said attorney of Cleaveland, Cummings & Woodruff gave his check (which was afterwards paid) to the attorneys of Vietor & Achelis, for twenty-five per cent on the dollar of said claim, and said attorneys remitted twenty of said twenty-five per cent to Vietor & Achelis.   This payment to the attorneys of Vietor & Achelis was a cover under which Vietor & Achelis were to and did receive on their claim more than sixty per cent, and such payment was made, after Vietor & Achelis had refused to take sixty per cent, by agreement between the attorneys of Cleaveland, Cummings & Woodruff and Vietor & Achelis that Vietor & Achelis should receive eighty per cent.

"11.   The amount due on the original claim is $4850.10, and the interest thereon from December 29th, 1883, to April 14th, 1886, is $679.35, making $5529.45 in all."

 Thereupon a judgment was entered, which stated that the court found the issues for the plaintiffs, and assessed their damages at $5529.45, and overruled a motion by the defendants for a new trial, and ordered that the plaintiffs recover from the defendants Cleaveland, Cummings and Libbey, survivors of Woodruff, $5529.45 damages and $147.80 costs.   To review this judgment, the defendants brought a writ of error.

 There was a bill of exceptions, which stated that both par-

ties adduced evidence tending to prove the issues on their respective sides; that, when the written paper dated October 30, 1883, set forth in the fifth special finding, was offered in evidence, the defendants objected to its introduction, on the ground that it was incompetent and irrelevant, but the court overruled the objection and admitted the paper in evidence, and the defendants excepted; that the plaintiffs also offered in evidence the paper dated December 29, 1883, signed "Cleaveland, Cummings & Woodruff," set forth at the close of the ninth special finding; that the defendants objected to its introduction, on the grounds of variance and incompetency, but the court overruled the objection and admitted the paper in evidence, and the defendants excepted; that evidence was introduced touching the matters named in the tenth special finding, and the defendants adduced evidence tending to show that no payment was made to either of the mercantile creditors by preference, or with a view to discriminate between one of the said creditors and another; that the defendants objected to the evidence tending to show that Vietor & Achelis were paid more than sixty per cent, on the ground that such payment, if made as claimed by the plaintiffs, was not made voluntarily; that the court overruled the objection, and held that, under the contract of December 29, 1883, signed "Cleaveland, Cummings & Woodruff," any payment over sixty per cent was made voluntarily, unless such claim had gone to judgment; that the defendants excepted to such ruling; and that it appeared from the evidence that the borrowed money was paid in full during November, 1883, and each of the mercantile creditors received sixty per cent on their claims, from Cleaveland, Cummings & Woodruff.

*Mr. James S. Harlan,* (with whom was *Mr. S. S. Gregory* on the brief,) for plaintiffs in error, cited: *Kingsley* v. *Kingsley,* 20 Illinois, 203; *Potter* v. *Green,* 6 Allen, 442; *Brooks* v. *White,* 2 Met. (Mass.) 283; *Goodnow* v. *Smith,* 18 Pick. 414; *Sibree* v. *Tripp,* 15 M. & W. 23; *Serviss* v. *McDonnell,* 107 N. Y. 260; *Graham* v. *Meyer,* 99 N. Y. 611; *Carey* v. *Barrett,* 4 C. P. Div. 379; *Chicago & Alton Railroad* v. *Chicago, Ver-*

*milion &c. Coal Co.*, 79 Illinois, 121; *Radich* v. *Hutchins*, 95 U. S. 210, 213; *In re Sturges*, 8 Bissell, 79.

*Mr. J. R. Doolittle*, for defendants in error, cited: 2 Parsons Contr. 6 ed. 671, 672; *Serviss* v. *McDonnell*, 107 N. Y. 260, 265; *Hefter* v. *Cahn*, 73 Illinois, 296, 300; Bump on Composition, 20, 23; *Seving* v. *Gale*, 28 Indiana, 486; *Elfelt* v. *Snow*, 2 Sawyer, 94, 106; *Hoare* v. *Dawes*, 1 Doug. 371; *Robinson* v. *Wilkinson*, 3 Price, 538; *Graham* v. *Meyer*, 99 N. Y. 611; *Dambmann* v. *Schulting*, 75 N. Y. 55; *S. C.* (2d trial) 85 N. Y. 622, 623; *Carey* v. *Barrett*, 4 C. P. Div. (1879) 379, 381, 382; *Kingsley* v. *Kingsley*, 20 Illinois, 203; *Miller* v. *Manice*, 6 Hill, 114; *Wann* v. *McNulty*, 2 Gilman (Ill.) 355; *Bradshaw* v. *Combs*, 102 Illinois, 428, 433; 1 Greenleaf Ev., 12 ed. 34, § 284; *Morgan* v. *Griffith*, L. R. 6 Ex. 70; *Lewis* v. *Seabury*, 74 N. Y. 409; *Chapin* v. *Dobson*, 78 N. Y. 74.

MR. JUSTICE BLATCHFORD, after stating the case as above reported, delivered the opinion of the court.

It is contended for the plaintiffs that their assignment to Knickerbocker was not binding upon them, because the defendants did not disclose to them the financial standing of Libbey, nor the fact of his liability as a general partner in the firm of Cleaveland, Cummings & Woodruff, nor the liability in regard to the debts of that firm assumed by him by the paper set forth in the fifth finding.

But the ninth finding sets forth fully what took place between Knickerbocker and the plaintiffs, on the visit of the former to the latter, at New York, to propose to them to accept from the defendants sixty cents on the dollar. That finding states that Knickerbocker explained the situation of the assets of Cleaveland, Cummings & Woodruff, saying that the borrowed money was to be paid in full, which would not leave enough to pay quite sixty per cent of the remaining indebtedness (a fact which was true, according to the seventh finding); that Libbey's liability as a member of the firm was spoken of, when Knickerbocker stated to the plaintiffs that he

had not had opportunity to examine into the question and was not in possession of information to know whether Libbey could make a successful defence or not, but that it was a question they could investigate for themselves; and that one of the plaintiffs said to Knickerbocker that they had sold no goods to the defendants "on the strength that Libbey was more than a special partner," that no credit had been given to the firm on the faith that Libbey sustained any other relation to it, that Libbey had lost his special capital, and that they had no desire to make him pay more. The ninth finding does not state that Knickerbocker was in possession of any information such as that which he stated to the plaintiffs he was not in possession of.

The ninth finding further says that it does not appear from the evidence that the defendants or Knickerbocker communicated to the plaintiffs the fact that Libbey had signed the paper set forth in the fifth finding, or that Knickerbocker made any statement as to Libbey's financial ability to pay the debts of the defendants' firm. It is not shown that Knickerbocker made a false answer to any inquiry put to him by the plaintiffs.

It thus appears that Libbey's liability as a member of the defendants' firm was spoken of between Knickerbocker and the plaintiffs; that Knickerbocker made to them no representation that Libbey was not liable, but substantially stated to them that the question of Libbey's liability was a matter to be examined into, and one which they could investigate for themselves; that the plaintiffs communicated to Knickerbocker at the time the idea that, in their dealings with the defendants, they had always acted on the view that Libbey was only a special partner; and that Knickerbocker did not state to the plaintiffs that Libbey was not financially able to pay the debts of the defendants' firm.

The exact date of this interview in New York, between Knickerbocker and the plaintiffs, does not appear, but it would seem, from the eighth and ninth findings, that an interval of between five and six weeks must have elapsed between the time of that interview and the 29th of December, 1883, when the assignment to Knickerbocker was executed.

It is not found by the court that it was known to the defendants' firm or to Libbey that the latter was not merely a special partner; nor is it found that the defendants were guilty of any fraudulent concealment. The suggestion by Knickerbocker to the plaintiffs that there was a question as to the liability of Libbey as a general partner, was full enough to put them on inquiry, and to call upon them to investigate the question for themselves, during the five or six weeks that elapsed before they made the assignment to Knickerbocker.

As to the statement in the ninth finding, that it does not appear that the defendants or Knickerbocker communicated to the plaintiffs the fact that Libbey had signed the paper set forth in the fifth finding, it is to be remarked that that paper sets forth that the liabilities of the defendants' firm were to be paid by the proposed new firm of Cummings, Woodruff & Brown; and that the sixth finding states that it was contemplated, on the day that paper bears date, that a new firm would be formed, composed of Cornelius B. Cummings, Charles W. Woodruff and Swan Brown, as general partners, and Washington Libbey as special partner, but that such new firm was never formed, although Cleaveland supposed it was so formed when he sold out to Libbey his interest in the firm of Cleaveland, Cummings & Woodruff, on the day that paper was signed. As the new firm was never formed, that paper had no effective force at the time of the interview between Knickerbocker and the plaintiffs, or at the time the assignment to Knickerbocker was made. Besides, Libbey was to be only a special partner in the new firm.

We are unable to see, in this case, any breach of good faith on the part of the defendants, or any misrepresentation as to the assets of their firm, or any false answer by Knickerbocker to any question put to him by the plaintiffs.

It is found as a fact, by the court below, that Cleaveland, Cummings and Libbey, with one Shelley, in December, 1881, formed a limited copartnership under the statute of Illinois, under the name of "Cleaveland, Cummings & Shelley," in which Libbey was a limited partner, having put in $50,000 of capital; that, about the 1st of May, 1883, Shelley went out of

the firm, and Woodruff came into it, the firm being then called "Cleaveland, Cummings & Woodruff;" and that that firm intended, as between its members, to do business as a limited partnership, but did not take the steps required by law to make itself a limited partnership under the statute of Illinois. It is not found that either Cleaveland, or Cummings, or Woodruff, or Libbey, supposed at any time that the copartnership was other than a limited one; and it distinctly appears, by the ninth finding, that the plaintiffs, in selling their goods to the defendants, all the time regarded Libbey as only a special partner.

In a case very like the one before us (*Dambmann* v. *Schulting,* 75 N. Y. 55) it was held that a party can commit a legal fraud, in a business transaction with another, only by fraudulent misrepresentations of fact, or by such conduct or artifice, for a fraudulent purpose, as will mislead the other party, or throw him off his guard, and cause him to omit inquiry or examination which he would otherwise make; that where there is no such relation of trust or confidence between the parties as imposes upon one an obligation to give full information to the other, the latter cannot proceed blindly, omitting all inquiry and examination, and then complain that the other did not volunteer to give the information he had; that ignorance of a fact extrinsic and not essential to a contract, but which, if known, might have influenced the action of a party to the contract, is not such a mistake as will authorize equitable relief; and that, as to such facts, the party must rely upon his own vigilance, and, if not imposed upon or defrauded, will be held to his contract. That was an action brought to set aside a release under seal, on the ground that it was inoperative, because obtained by misrepresentation and a concealment of material facts. It was not found that there was any fraudulent misrepresentation, and there was none in fact, and there was no misrepresentation of any kind, nor was there any fraudulent concealment of any facts; nor was any statement or artifice used to throw off from his guard or to entrap or mislead the party executing the release. The court says in its opinion: "A party buying or selling property, or executing instruments, must, by inquiry or

examination, gain all the knowledge he desires. He cannot proceed blindly, omitting all inquiry and examination, and then complain that the other party did not volunteer all the information he had." These views were reaffirmed when the case was again before the court, in 85 N. Y. 622.

In *Graham* v. *Meyer*, 99 N. Y. 611, it was held that a compromise made by a debtor with his creditor cannot be assailed on the ground that the debtor omitted to disclose his financial condition; and that where he is not questioned in regard thereto, and does nothing to mislead, he is not bound to make any such disclosure. It was claimed in that case that, although there was a failure to show that any fraudulent representations were made on the part of the debtor to induce the compromise, yet it ought to be set aside on account of the undue concealment by the debtor and his attorney of the true condition of the estate of the debtor, which he had assigned under a general assignment for the benefit of his creditors. The court said : " But the defendant was not bound to make any disclosure of his financial condition. He was not asked to make any. He made no misrepresentations, and did nothing to mislead Graham, or prevent him from inquiring, or to throw him off from his guard. They negotiated at arms' length. The defendant was in no trust or confidential relation with him. It is true that he had made an assignment, and had thereby created a trust for Graham's benefit. But he was not the trustee. He bore the simple relation to him of debtor, and he had the right to make the best compromise with him he could, using no fraud or culpable artifice to accomplish the result. Each party to such a compromise has the right to the advantage which his superior skill, foresight and knowledge may give him. The business of the world can be conducted upon no other basis. If either party desires information from the other, he must ask for it; and then he must not be misled or deceived by answers given. These views are fully sustained by the case of *Dambmann* v. *Schulting*, 75 N. Y. 62, and the court below was not mistaken in holding that that case was a controlling authority for the decision it made. The principles of law laid down in that case were in no way im-

pugned or questioned when the case again came before this court, in 85 N. Y. 622, but they were reaffirmed."

As to Libbey's financial ability, the seventh finding states that he "was reputed to be a man of large wealth," not that he was a man of large wealth. The failure of Knickerbocker to make any statement as to Libbey's financial ability to pay the debts of the defendants' firm cannot give rise to any inference of concealment or fraud, because the importance of Libbey's financial ability depended entirely upon whether he was a special or a general partner; and the statement made by one of the plaintiffs to Knickerbocker, that they had acted, in their dealings with the defendants' firm on the view that Libbey was only a special partner, joined with the fact that Knickerbocker distinctly suggested to them an investigation of the question as to the character of Libbey's liability as a member of the firm, shows that there was no duty on the part of Knickerbocker, as representing the defendants, to make any statement as to Libbey's actual or reputed financial ability.

The only remaining question is as to whether the defendants violated the agreement made by them in the paper signed in their firm name, dated December 29, 1883, set forth in the ninth finding, "not to pay voluntarily to any of their creditors holding claims in excess of one thousand dollars, to exceed sixty per cent on the dollar in settlement."

It appears by the tenth finding that, in April, 1884, all the mercantile debts of the defendants' firm had been settled at 60 cents and released, except about $88,000; that the firm of Vietor & Achelis had not released their claim, but had brought a suit by attachment thereon, against Cleaveland, Cummings, Woodruff and Libbey, which was about to be tried; that the attorney of the defendants' firm paid to Vietor & Achelis 60 cents on the dollar of their claim, which they thereupon released, and that at the same time said attorney gave his check, which was afterwards paid, to the attorneys of Vietor & Achelis, for 25 per cent. on the dollar of said claim, and the latter attorneys remitted 20 of said 25 per cent to Vietor & Achelis; that this payment was a cover under which Vietor & Achelis were to and did receive on their claim

more than 60 per cent, and such payment was made, after Vietor & Achelis had refused to take 60 per cent, by agreement between the attorneys of Cleaveland, Cummings & Woodruff, and of Vietor & Achelis, that the latter should receive 80 per cent.

We are of opinion that the facts set forth in the tenth finding fail to show that the payment of the 20 per cent to Vietor & Achelis was a voluntary payment. They had brought a suit by attachment on their claim, against their debtors, and the suit was about to be tried. There was evidently no defence to it, and a judgment for the full amount of it would be recovered, and it was secured by attachment. A settlement of the entire claim for 80 per cent would be a saving of 20 per cent, and would, to that extent, increase the assets of the firm, which were not quite sufficient to pay the 60 cents on the dollar which the firm proposed to pay on the mercantile debts, and which they had paid, by April, 1884, and prior to the transaction with Vietor & Achelis, on debts amounting to $373,000. Under these circumstances, the payment of the 20 per cent to Vietor & Achelis was not voluntary.

It appears by the bill of exceptions that the defendants objected to the evidence tending to show that Vietor & Achelis were paid more than 60 per cent, on the ground that such payment was not made voluntarily, but that the court held that, under the paper of December 29, 1883, signed by Cleaveland, Cummings & Woodruff, any payment over 60 per cent was made voluntarily, unless the claim had gone to judgment. If the claim had gone to judgment, the payment over 60 per cent would have been 40 per cent; and we do not see that the payment of the 20 per cent, at the time it was made, was any the less involuntary than would have been the payment of the 40 per cent after judgment had been obtained.

In Carey v. Barrett, 4 C. P. Div. 379, certain creditors of the defendant signed an agreement, to which the plaintiff assented, setting forth that they, in consideration of ten shillings in the pound on their respective debts, agreed to accept the same in discharge of those debts, " the whole of the creditors receiving not exceeding a like sum in discharge of their

debts." At the time the agreement was entered into, it was known that the debtor was being sued by a creditor for a sum of money which was afterwards paid in full the day before the cause was ripe for trial. In consequence of this, the plaintiff sued the defendant to recover a part of his unpaid debt. The court (Lord Coleridge, C. J., and Lindley, J.) held that the agreement of compromise was limited to the creditors who signed it, and that, even if that were not so, the payment to the creditor who was paid in full, being made under pressure, and not in pursuance of a prior arrangement to give him a preference, did not render the transaction void. Lord Coleridge said that the payment in full "was not the less a payment under process of law, because the debtor did not wait to incur the expense of a judgment and execution."

In *Radich* v. *Hutchins*, 95 U. S. 210, 213, it is laid down that where there is an actual or threatened exercise of power possessed over the property of another by the party exacting or receiving a payment, there is coercion or duress, which will render a payment involuntary; and the case of *Mayor of Baltimore* v. *Lefferman*, 4 Gill, 425, is cited, which holds, that when a payment is made to emancipate property from an actual and existing duress imposed upon it by the party to whom the money is paid, the payment is to be regarded as compulsory.

*The judgment is reversed, and the case is remanded to the Circuit Court with a direction to enter judgment for the defendants on the findings of fact.*

Mr. Justice Miller dissented.

Mr. Chief Justice Fuller, having been of counsel in this case, did not sit in it or take any part in its decision.