In re NUTTALL et al.

(District Court, S. D. New York. December 27, 1912.)

1. BANKRUPTCY (§ 391*)—PROSECUTION OF ACTIONS IN STATE COURTS PENDING BANKRUPTCY PROCEEDINGS—INJUNCTION.

Under Bankruptcy Act July 1, 1898, c. 541, § 2 (15), 30 Stat. 545 (U. S. Comp. St. 1901, p. 3420), authorizing the bankruptcy court to make such orders as may be necessary for the enforcement of the act, and section 11a, providing that a suit founded on a claim from which a discharge would be a release, and which is pending against one at the time of the filing of the petition against him, shall be stayed until after adjudication or dismissal, the bankruptcy court may restrain the further prosecution of actions pending against a bankrupt when the bankruptcy proceedings are instituted or commenced thereafter pending the proceedings, provided the claim sued on is one for which a discharge in bankruptcy will be a release, and may also restrain further prosecution of pending actions interfering with a proper and speedy enforcement of the act.

[Ed. Note.—For other cases, see Bankruptcy Cent. Dig. §§ 637–655; Dec. Dig. § 391.*

Enjoining proceedings in state courts, see notes to Garner v. Second Nat. Bank of Providence, 16 C. C. A. 90; Central Trust Co. of New York v. Grantham, 27 C. C. A. 575; Copeland v. Brunning, 63 C. C. A. 437.]

2. BANKRUPTCY· (§ 391*)—DISCHARGE—EFFECT—CLAIMS FOUNDED ON FALSE PRETENSES OR FALSE REPRESENTATIONS.

The bankruptcy court will, pending application for the discharge of a bankrupt, restrain the prosecution in a state court of an action against him, founded on a claim that the bankrupt, while insolvent, purchased goods on credit with the undisclosed intention to pay therewith relatives and with the undisclosed intention to go into bankruptcy, but not making any representations nor concealing any fact as to his financial condition, since the question, whether the claim filed and proved in bankruptcy is based on false pretenses or false representations so as to be unaffected by a discharge in bankruptcy under Bankruptcy Act July 1, 1898, c. 541, § 17 (2), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), is doubtful, and the bankrupt should have opportunity to plead his discharge, if granted.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 637–655; Dec. Dig. § 391.*]

3. BANKRUPTCY (§ 421*)—CLAIMS PROVABLE—EFFECT.

Where a claim is founded on an open account or on contract, express or implied, and may be proved under Bankruptcy Act July 1, 1898, c. 541, § 63a, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3447), if the creditor

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

waives any tort and files his claim, the claim is provable and barred by a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 772–774, 779–786; Dec. Dig. § 421.*]

4. BANKRUPTCY (§ 435*)—DISCHARGE—AVAILABILITY AS A DEFENSE.

A bankrupt may not plead a discharge as a defense until it is granted, and a discharge is not available unless pleaded.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 824–839; Dec. Dig. § 435.*]

5. FRAUD (§ 1*)—DEFINITION.

A legal "fraud" can be committed only by fraudulent representations of fact, or by such conduct or artifice for a fraudulent purpose as will throw one off his guard and cause him to omit inquiry or examination which he would otherwise make.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 1–7; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 3, pp. 2943–2954; vol. 8, p. 7666.]

In the matter of the bankruptcy of John A. Nuttall and another, individually and as copartners of the firms of the Empire Knitting Mills and John A. Nuttall & Company, bankrupts. Application on order to show cause for an order restraining Leonard Paulson and others from prosecuting an action in the Supreme Court of the state of New York against the bankrupts. Granted.

Thomas S. Fagan, of Troy, N. Y., for the motion.
J. S. Carter, of Cohoes, N. Y., opposed.

RAY, District Judge. The defendants in an action in the Supreme Court of the state of New York, John A. Nuttall and Lillian M. Herrick, were duly adjudicated bankrupts on the 8th day of January, 1912, individually and as copartners of the firms of Empire Knitting Mills and John A. Nuttall & Co. They have applied for a discharge in bankruptcy, and such application, specifications of objection having been filed thereto, is now pending undetermined. Long delay in such proceedings is unnecessary. The claim of the plaintiffs in said action, Leonard Paulson, Cortland Linkroum, and James Hooker, amounting to $998.95, was duly scheduled, and a discharge therefrom prayed, and the said plaintiffs have proved their said claim in said bankruptcy proceedings, still pending, and same was allowed. Shortly after the petition was filed, said claimants, Paulson, Linkroum, and Hooker commenced an action in the Supreme Court of the state of New York on the same indebtedness so scheduled and later proved and allowed. The defendants allege and claim that the said debt and demand is of such a character and nature that a discharge in bankruptcy will be a full release to them therefrom. The said plaintiffs contend, however, that the claim or cause of action sued upon is a liability for obtaining property by false pretenses or false representations, and that the complaint so shows on its face, and that there can be no recovery at all unless such a cause of action is made out on the trial. The plaintiffs claim that under section 17 (2) a discharge in bankruptcy will not be a release. All this the defendants deny. The claim

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

proved was in contract and contained no charge of obtaining property by false pretenses or false representations. This proof of claim has not been withdrawn.

[1] It is settled law that the bankruptcy court may restrain the further prosecution of all actions pending against the bankrupt when the bankruptcy proceeding is instituted or commenced thereafter during the pendency of such bankruptcy proceedings, provided the claim or demand sued upon is one from which a discharge in bankruptcy will be a release. Section 11a, Bankruptcy Act, relating particularly to suits begun before bankruptcy proceedings are instituted, and section 2 (15), which specifically authorizes the bankruptcy court to "make such orders * * * in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act." In the latter class of cases it is not essential that the suit be founded on a claim of such a nature that the judgment or debt represented thereby will be released by the discharge. If the prosecution of the suit to judgment and the enforcement of the judgment during the pendency of the bankruptcy proceedings will interfere with the proper and speedy enforcement of the provisions of the act or tend to embarrass the court, its prosecution may be enjoined. Collier on Bankruptcy (9th Ed.) 262, 263; In re Basch (D. C.) 3 Am. Bankr. Rep. 235, 97 Fed. 761; In re Gutman & Weak (D. C.) 114 Fed. 1009, 8 Am. Bankr. Rep. 252.

[2] But it has been decided that the claim sued upon must be *clearly* dischargeable or a stay should be granted. In re Sullivan, 2 Am. Bankr. Rep. 30. In Collier on Bankruptcy (9th Ed.) 266, it is said:

"The stay should usually be granted if the bankrupt is threatened with arrest or will be needlessly harassed."

In this case, at bar, it is not at all clear that the complaint states a cause of action for obtaining property by false pretenses or false representations within the meaning of the act. The sum and substance of the complaint is:

(1) That defendants prior to December 27, 1911, had purchased goods of plaintiffs, and, so far as appears, paid for them, and had not disclosed any financial embarrassment or insolvency.

(2) That on or about December 27, 1911, the defendants by letter requested plaintiffs to quote their best prices for 50,000 pounds of white cotton yarn, deliveries to commence at once, 5,000 pounds weekly, and that December 30, 1911, plaintiffs visited the defendants at their mill, and, on information and belief, that for the purpose of inducing plaintiffs to deliver said yarn the defendants then and there made to plaintiffs the false and fraudulent representations and statements in substance following:

"We will pay you 20½ cents a pound for 20,000 pounds of 30s white cotton yarn to be shipped at once, and we will pay you 20½ cents a pound for 30,000 pounds of such yarn to be shipped, 5,000 pounds a week commencing February, 1912."

These are mere promises to pay for goods which they seek to purchase. These are all of the false representations alleged to have been actually made.

(3) That plaintiffs refused this offer, but offered to sell same at 21 cents a pound, and that thereupon the defendants agreed to purchase 20,000 pounds at 21 cents per pound, shipment made at once, and 30,000 pounds at same price per pound, shipments in parcels of 5,000 pounds each commencing February, 1912.

(4) On information and belief that the defendants then contemplated filing a petition in bankruptcy, and the ordering of such goods and the agreement to pay for same was in furtherance of a deceptive and fraudulent scheme on the part of the defendants to induce plaintiffs to ship a part or all of said first lot of 20,000 pounds before filing their petition in bankruptcy and to enable them to transfer the warehouse receipts for same to certain relatives.

(5) That, relying on the supposed good faith and honesty of the defendants in ordering and agreeing to pay for such goods, same were shipped and delivered in part on the 2d and 3d days of January, 1912.

(6) That on the delivery of such goods the defendants placed same in warehouse and procured warehouse receipts for same and executed transfers of same, but retained same until after their bankruptcy.

(7) That on learning of defendants' insolvency the plaintiffs demanded such goods but same were not returned.

(8) On information and belief that defendants knew, or *should have known,* of their insolvency when they ordered the yarn and that they could not pay for same.

(9) That defendants were not in need of the yarn when ordered.

(10) On information and belief that defendants had been conducting business at a loss for three years, and knew, or should have known, they were insolvent when they ordered the goods.

(11) That the defendants' purpose was to get such property and use same in the manner stated to protect their relatives on alleged antecedent debts. There is no allegation that defendants made any representation or statement whatever in connection with the purchase of such yarn, except that they promised to pay for same, and the substance is that the defendants knew, *or ought to have known, of their inability to pay and then intended to go into bankruptcy and not pay.*

The complaint alleges that the plaintiffs have not filed and proved their claim; but the moving papers allege that such claim has been filed and proved, and this was conceded on the argument.

There is a difference between mere fraud and false pretenses and false representations. The complaint, in substance, states that defendants intending to get property from plaintiffs with which to pay certain relatives, and intending to go into bankruptcy, when it ought to have known they were insolvent, offered to purchase goods and pay for them. It is not alleged that plaintiffs made any inquiries as to defendants' financial condition, or that defendants made any representations or concealed any fact on inquiry made, express or implied. There was no relation of trust or confidence. There is no allegation of conduct calculated to mislead or prevent inquiry.

[5] In Dambmann v. Schulting, 75 N. Y. 55, and again in 85 N. Y. 622, where the case came again before the court, it was held that a party can commit a legal fraud in a business transaction with an-

other, only by fraudulent misrepresentations of fact, or by such con-
duct or artifice for a fraudulent purpose as will mislead the other
party, or throw him off his guard and cause him to omit inquiry or
examination which he would otherwise make, and that, when there is
no such relation of trust or confidence between the parties as imposes
upon one an obligation to give full information to the other, the lat-
ter cannot proceed blindly, omitting all inquiry and examination, and
then complain that the other did not volunteer to give the informa-
tion he had. This case was examined, quoted, approved, and fol-
lowed in the Supreme Court of the United States. Cleaveland v. Rich-
ardson, 132 U. S. 318, 329, 330, 10 Sup. Ct. 100, 33 L. Ed. 384. In
that case the Supreme Court also cited and approved Graham v.
Meyer, 99 N. Y. 611, 1 N. E. 143, where it was held that a com-
promise made by a debtor with his creditor cannot be assailed on the
ground that the debtor omitted to disclose his financial condition, and
that "when he is not questioned in regard thereto and does nothing
to mislead, he is not bound to make any such disclosure." When a
person purchases property, there is always a promise to pay there-
for, express or implied, and if this promise is not fulfilled we may
infer and even find that the party did not intend to keep it. This is
especially true when the promisor has no property or means of pay-
ment at the time, only expectations. But in the absence of some un-
true express voluntary statement made to secure the property as to
ability to pay, or of some untrue statement as to such ability made
in answer to inquiries, can it be said that the mere offer to purchase
and pay an agreed price named, accompanied by an intent not to
pay, is obtaining property by "false pretenses or false representa-
tions"? When the Bankruptcy Act was enacted, to be excepted from
the operation of the discharge, a liability for obtaining property by
false pretenses or false representations had to be reduced to judgment.
The main reason for this provision in that form is well stated by
Werner, J., in Tindle v. Birkett, 183 N. Y. at page 271, 76 N. E. 25,
quoting the Supreme Court. The section has since been amended so
that *liabilities* for obtaining property by false pretenses or false rep-
resentations are not affected by the discharge. This fact, if it be a
fact, can be shown as well in the bankruptcy court when the claim
is proved as in the state court so far as preventing the operation of
a discharge therein is concerned.

[3] But the point to which attention is invited is that stated by
Judge Werner in the Tindle Case, which was affirmed by the Supreme
Court of the United States, 205 U. S. 183, 27 Sup. Ct. 493, 51 L.
Ed. 762, and where it was held:

"Where a claim is founded upon an open account, or upon contract express
or implied, and can be proved under section 63a of the Bankruptcy Act, if
the claimant desires to waive the tort and take his place with the other cred-
itors, the claim is one provable under the Act and barred by the discharge."

In the language referred to he says, quoting the Supreme Court:

"If a creditor has a claim against a debtor for goods sold, which would
ordinarily be covered by a discharge in bankruptcy, he is strongly tempted
to allege, and if possible to prove, that the goods were purchased *under a*

*misrepresentation of the assets of the buyer*, and *thus* to make out a claim for fraud which would not be discharged in bankruptcy."

I doubt if our courts will ever hold that the purchase of goods at an agreed price, accompanied by an intent on the part of the purchaser not to pay for them, in the absence of any representation whatever as to the ability of the purchaser to pay, or any representation of a fact tending to induce a sale and secure a delivery of the property, and in the absence of any acts or conduct tending to avoid or pre-vent inquiry as to financial condition, creates a liability for obtaining property by false pretenses or false representations. Such a holding will be a far advance on the doctrines enunciated in Dambmann v. Schulting, Graham v. Meyer, and Cleaveland v. Richardson, supra. In Atlanta Skirt Co. v. Jacobs, 8 Ga. App. 299, 68 S. E. 1077, 25 Am. Bankr. Rep. 895, the court did hold that:

"A false representation may consist in the purchasing of goods with no: present purpose of paying for them and in contemplation of a fraudulent insolvency. To buy goods without a present intention to pay is a false repre-sentation of one's intention. Therefore to buy goods without a present inten-tion to pay will avoid a discharge."

This I am not prepared to sanction. Is it a false pretense or rep-resentation not to disclose one's intent not to pay? It may be that the defendants were guilty of fraud (Ames v. Moir, 138 U. S. 306, 312, 11 Sup. Ct. 311, 34 L. Ed. 951); but a debt created by the fraud of a person thereafter adjudged a bankrupt is dischargeable, unless same was created by his fraud "while acting as an officer or in any fiduciary capacity" (Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147; Tindle v. Birkett, 205 U. S. 183, 27 Sup. Ct. 493, 51 L. Ed. 762). Of course, this does not apply to the "fraud" involved in "obtaining property by false pretenses or false representa-tions."

. The language of the Bankruptcy Act of March 2, 1867, c. 176, § 33, 14 Stat. 533, as to debts or liabilities excluded from the opera-tion of a discharge, was different. That section provided:

"No debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy; but the debt may be proved and the dividend thereon shall be a payment on account of such debt."

Under that act any debt created by actual fraud, as distinguished from implied fraud, was not discharged. By reference to section 63a, "Debts which may be proved," we find:

"Debts of the bankrupt may be proved and allowed against his estate which are: * * * (4) Founded upon an open account, or upon a contract express or implied."

It cannot be doubted that this debt of these plaintiffs was founded on a contract, and may it be proved as such without reference to any alleged false pretenses or representations, allowed and a dividend declared, and at the same time prosecuted in the state court as a. lia-bility "for obtaining property by false pretenses or false representa-tions"? If so, of. what force is the decision of the Supreme Court in Tindle v. Birkett, 205 U. S. 183, 27 Sup. Ct. 493, 51 L. Ed. 762;

above quoted? Or is it to be the law that the liability may be proved in the bankruptcy court as a debt founded upon a contract under section 63a (no reference to any fraudulent pretenses or representations), and again in the Supreme Court of the state as a liability for obtaining property by false pretenses or false representations, so as to then establish it as a debt not affected by the discharge? If so, Tindle v. Birkett, supra, is of little force. But I am not called upon to finally decide these questions. It is not clear, but, on the other hand, extremely doubtful, that the claim set out in the complaint of these plaintiffs in the state court is one from which a discharge will not be a release, and hence the motion should be granted.

[4] The defendants cannot plead their discharge until it is granted, and, should I allow this action to go to judgment before the question of their discharge is finally determined, they would be deprived of a valid defense should such discharge be finally granted; at least they would be deprived of the opportunity to present it. In Collier on Bankruptcy (9th Ed.) 391, it is said:

"As the law now stands, the frauds which will bar discharge are those connected with the obtaining of property by false pretenses or false representations."

See Mackel v. Rochester (D. C.) 14 Am. Bankr. Rep. 429, 135 Fed. 904; Bullis v. O'Beirne, 195 U. S. 606, 619, 620, 25 Sup. Ct. 118, 49 L. Ed. 340.

And at page 404, Collier says:

"A discharge being only available in bar, it must be regularly pleaded."

And at page 364, the same author says:

"The better practice is to procure a stay of all pending suits, and to stay those which may be brought while the proceeding is pending, and then when the discharge is granted to plead it."

The plaintiffs here will suffer nothing by a stay. When the question of discharge is determined, the action can proceed, and the state court, in the first instance, will determine whether it is a bar to the action.

Motion granted.