## HANSEN v. CHRISTIE et al.

### No. 10840.

Court of Civil Appeals of Texas. Galveston.

Oct. 26, 1939.

Rehearing Denied Nov. 16, 1939.

Kemper, Hicks & Cramer, of Houston, and Albert G. Avery, of New York City (F. Warren Hicks, of Houston, and Albert G. Avery, of New York City, of counsel), for appellant.

Kayser, Liddell, Benbow & Butler, Cecil N. Cook, and Frank A. Liddell, all of Houston, for appellees H. Merlyn Christie, Clayton N. Smith, F. L. Luckel, A. F. Engel, Thoburn Taggart and W. G. Blanchard.

Vinson, Elkins, Weems & Francis and I. M. Wilford, all of Houston, for appellee City Nat. Bank of Houston, trustee.

Cole, Patterson & Cole, of Houston (Robert L. Cole, Sr., of Houston, of counsel), for appellee Herbert Roedenbeck.

CODY, Justice.

This is a suit for cancellation of a deed brought by the grantor, and for the recovery from the grantee, and certain others who were associated with the grantee, of the consideration which they had received from the Humble Company for an oil and gas lease given to the Humble Company, covering the land conveyed by the deed sought to be cancelled. The ground relied on by the grantor, who has resided in Germany since 1923, is the alleged fraudulent concealment from him of the value of the land for oil purposes when the deed was procured from him. The grantor, who was plaintiff below and is appellant here, expressly recognized that the Humble Company occupied the status of an innocent purchaser for value, and its rights to a seven-eighths working interest under its lease was expressly recognized.

It has been finally determined, since the institution of this suit, that appellant actually owned no interest in the land at the time he gave the deed which he seeks to have cancelled. Roedenbeck Farms, Inc. et al. v. Broussard et al., Tex.Civ.App., 124 S.W.2d 929, error refused in Tex.Sup., 127 S.W.2d 168. But no contention is made that appellant's claim of ownership of the land was not a valuable right, or that such claim of ownership, if proved abortive, would be any obstacle to appellant obtaining the relief he seeks, if he is otherwise entitled to it. The evidence relating to the course of the title to the property involved is set forth in such detail in the Broussard case that the following statement will suffice here:

On June 22, 1909, Herbert Roedenbeck, one of the appellees, owned Section 63, and other sections, in H. & T. C. Ry. Survey, in Chambers County. On December 10, 1915, he gave a deed of trust to Section 63, and the other sections, to secure Broussard in the payment of four notes of even date, each for $2,880. Thereafter, on July 2, 1917, Roedenbeck conveyed the N.E. quarter of section 63 to appellant, and during the same year conveyed the N.W. quarter and S. half of Section 63 to one Harms and one Miller. These conveyances were made subject to the Broussard deed of trust.

On March 29, 1924, Roedenbeck rescinded the sale to Harms and Miller by conveying Section 63 to Roedenbeck Farms, Inc. The inclusion of the N.E. quarter of the section was made by a mistake, which was subsequently corrected. The foreclosure of the Broussard deed of trust lien, at which Broussard bought in Section 63, which occurred in 1931, cut off the rights of appellant therein.

On June 29, 1933, Broussard gave an oil and gas lease on Section 63 to the Humble Company.

During 1930 to 1932 the Humble Company conducted extensive geophysical work in Chambers County and took up leases upon some 12,000 acres, including the lease on Section 63, from Broussard, just mentioned. On December 10, 1934, the Humble Company started drilling on a location in the S.W. corner of Section 58, adjoining the northern boundary of Section 63, and continued until February 19, 1935, when a depth of 7,052 feet had been reached. Until then the well had been drilled as a closed one. The Humble Company then gave out the information as to the depth and formation of the well, and this information was published in the Anahuac Progress, a newspaper in Chambers County. The Humble Company continued its drilling of the well with showings of gas and oil, and on March 11, cored an oil sand, and on March 18 the well produced 646 barrels, and was shut in for want of storage facilities. The three Houston papers and the Oil Weekly after February 19 covered the drilling operations, and announced the discovery of a new oil field.

Clayton N. Smith, one of the appellees, in examining the records in Chambers County early in 1935, discovered what he believed to be a fatal defect in the foreclosure of the deed of trust lien securing the Broussard loan to Roedenbeck. He got in touch with appellee Roedenbeck, and after the drill stem test, on February 20, and met the appellees, Roedenbeck, Luckel and Christie, and it was agreed to try to get deeds from those who would be the owners of Section 63, if the foreclosure of the Broussard deed of trust lien were fatally defective. Roedenbeck furnished the addresses of such owners and was to assist in getting deeds. The deeds were to be taken in Christie's name, and Luckel and Smith were to furnish the money. Roedenbeck was to get 30% of the profits, but was not to share in the leases, Luckel and Smith 20% each, and Christie 30%. After such meeting, Roedenbeck and Christie left for Illinois and Indiana to get deeds from those to whom Roedenbeck had conveyed the N. W. one-fourth and S. one-half of Section 63 in 1917, paying something like $2000 apiece therefor.

On March 12, 1935, Christie cabled appellant in Germany as follows:

"I offer you $2000.00 for your title and land northeast quarter Section 63 in Chambers County, Texas, you reserving ½₂ royalty interest. Cable reply great Southern Building, Houston, Texas."

Appellant replied on the same day:

"I accept your offer."

Christie then cabled appellant:

"Confirming your acceptance, Major Roedenbeck of Shelde will call upon you within few days bringing proper deed and will pay money to you there."

On March 28, 1935, Major Roedenbeck, who was a brother of Herbert Roedenbeck, met appellant at Hamburg, and delivered the money to appellant, and took appellant's

deed, without making representations of any kind.

Going back now to February 27, 1935, while Herbert Roedenbeck and Christie were getting the conveyances to the N.W. quarter and S. half of Section 63, Smith and Luckel saw Mr. Rex G. Baker, an attorney for the Humble Oil Company, and offered to lease his Company the land under the titles which they and their associates were getting. Mr. Baker stood on the validity of the lease his Company held from Broussard, though he did offer $10,-000. The executive department overruled the legal department, and on March 11, the Humble Company agreed to pay them for a lease on the N.W. quarter and the S. half of Section 63, $100,000 in cash, and an oil payment of $384,000 out of a 1/32 overriding royalty that might be produced from any interest held by the Humble Company in such land. And during the negotiations, when it became known that Smith and Luckel were on a trade for the N.E. quarter of Section 63, Mr. Baker, for the Humble Company, demanded an option to purchase a lease on such property on the same basis, that is, the cash consideration of $33,333.33, and an oil payment of $128,000, payable in the same way.

Much other evidence was submitted. Indeed, the statement of facts is in excess of 1,200 pages. But there is no dispute as to the foregoing facts.

The case was submitted to the jury on numerous special issues, upon the answers to which the court entered a judgment for appellees and against appellant.

Appellant presents numerous assignments of error.

He contends: That under the undisputed facts the purchase of the property by Christie and his associates from appellant was an unconscionable contract as a matter of law, and the deed should have been cancelled.

That the knowledge of Christie and associates of the sale and option of sale which they had made to the Humble Company, whereby they were to get $100,000 and an oil payment of $384,000 on the N.W. quarter and the S. half of Section 63, and $33,-333.33 and an oil payment of $128,000 on the N.E. quarter of Section 63, and appellant's ignorance of such facts, made it the duty of Christie and associates to reveal such facts to appellant, the failure to do which constituted in law fraudulent concealment, which required the court to cancel the deed, etc.

That if it was not the duty of Christie and associates to impart to appellant their knowledge of the value of the land for oil purposes, that nevertheless, having pled they intended by the wording of the offer and the provisions of the deed to inform appellant they were buying the land for oil purposes, and having testified to such effect, such appellees having made a voluntary partial disclosure were bound to make a full and complete disclosure of all material facts affecting the value of the land.

The disposition we make of this case renders it unnecessary to pass on the numerous other assignments of error relating to special issues which were submitted to the jury, to argument of counsel, to remarks of the court, and the like; for it is our opinion that not only was appellant not entitled to an instructed verdict, but that, under the undisputed facts, he was as a matter of law not entitled to the relief he sought.

In the case of Hyde v. McFaddin, 5 Cir., 140 F. 433, upon which appellant relies, the owners of land in Beaumont, who lived in the East, had executed a deed to land before the original Lucas discovery of oil near Beaumont in 1901, and had forwarded such deed to an attorney at Beaumont to represent them in making a sale of it to the vendee. Before the deed was delivered to the grantee, the Lucas "gusher" came in, and the proof showed that the attorney at Beaumont representing the landowners knew, before he delivered the deed, that the market value of the land was several hundred times the $1.50 per acre it was being sold for by the deed. The possession of the deed by their attorney was the possession of it by the owners, and his fiduciary relationship imposed upon him the duty to advise his clients of the changed situation which had transpired to their great enrichment. The grantee in the deed, with full knowledge that the attorney had failed in his duty, took the deed and paid the $1,500 consideration called for in the deed. It was of course unconscionable for the grantee in the deed to take the deed when he knew that it was the duty of the grantors' attorney to advise the landowners of the changed conditions brought about by the discovery of oil.

There was no fiduciary relationship existing between Christie and his associates which imposed upon them the duty to sub-

ordinate their interest to the service of appellant's interest. On the same day that Christie cabled him an offer to buy, appellant cabled back his acceptance. We quote at some length from Cleaveland v. Richardson, 132 U.S. 318, 329, et seq., 10 S.Ct. 100, 103, 33 L.Ed. 384:

"In a case very like the one before us, Dambmann v. Schulting, 75 N.Y. 55, it was held that a party can commit a legal fraud, in a business transaction with another, only by fraudulent misrepresentations of fact, or by such conduct or artifice, for a fraudulent purpose, as will mislead the other party, or throw him off his guard, and cause him to omit inquiry or examination which he would otherwise make; *that where there is no such relation of trust or confidence between the parties as imposes upon one an obligation to give full information to the other, the latter cannot proceed blindly, omitting all inquiry and examination, and then complain that the other did not volunteer to give the information he had;* that ignorance of a fact extrinsic and not essential to a contract, but which, if known, might have influenced the action of a party to the contract, is not such a mistake as will authorize equitable relief; and that, as to such facts, the party must rely upon his own vigilance, and, if not imposed upon or defrauded, will be held to his contract. * * * The court says in its opinion:

" '*A party buying or selling property, or executing instruments, must, by inquiry on examination, gain all the knowledge he desires. He cannot proceed blindly, omitting all inquiry and examination, and then complain that the other party did not volunteer all the information he had.*' " (Emphasis ours).

We quote from 20 Texas Jurisprudence, Section 21, page 41, as follows:

"Sec. 21. Absence of Duty to Disclose Facts.—One is not to be charged with fraud in suppressing information which he is not legally bound to volunteer. When, therefore, the parties are dealing at arm's length, there being no confidential relationship, mere silence is not fraud, either actual or constructive."

From 12 R.C.L., subject "Fraud and Deceit", page 306, Section 67, we quote as follows:

"67. Distinction between Silence and Concealment.—The law distinguishes between passive concealment and active concealment, or, in other words, between mere silence and the suppression or concealment of a fact; the difference consisting in the fact that concealment implies a purpose or design, while the simple failure to disclose a fact does not. As a general rule, to constitute fraud by concealment or suppression of the truth there must be something more than mere silence, or a mere failure to disclose known facts. There must be a concealment, and the silence must amount to fraud. Concealment in this sense may consist in withholding information asked for, or in making use of some device to mislead, thus involving act and intention. The term generally infers also that the person is in some way called upon to make a disclosure. It may be said, therefore, that, in addition to a failure to disclose known facts, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry, or else that there must be a legal or equitable duty resting on the party knowing such facts to disclose them. It is generally held that the failure to disclose material facts may be a good defense to a suit for specific performance even where it does not amount to fraud and would not be the basis of an action of deceit, because equity compels the specific performance of a contract only where it is fair and open, and where all material matters known to each party have been communicated to the other. There is authority, however, to the effect that mere silence is not a defense to such an action where there was no duty to speak."

Also from the same authority on the subject of "Value", which is the particular matter involved in this case, we quote Section 75, page 314, as follows:

"75. Value Generally.—It is generally held that where the parties are dealing at arm's length, and there is no confidential relation existing between them, and no request for information, or any other peculiar circumstances calling for such disclosure, and in the absence of actual fraud, a party to a transaction is under no legal obligation to disclose the reasons influencing him to enter into it, such as his views as to value, or a secret intrinsic value belonging to it, of which he knows and of which the other is ignorant, or extrinsic circumstances within his knowledge which affect value, or the sources of information at his disposal. Nor is either party obliged, under such circumstances, to answer the inquiries of the other."

We quote from Vol. 26, Corpus Juris, subject "Fraud", Section 12, page 1069, as follows:

"(Sec. 12) (d) Silence—(a) In General. Mere silence is not representation. In the absence of a duty to speak, silence as to a material fact does not of itself constitute fraud."

7 Texas Jurisprudence, 927:

"To authorize a cancellation on the ground of concealment there must, it seems, have been an intentional suppression of a fact which the defendant was bound to disclose."

7 Texas Jurisprudence, 931:

"Generally speaking, cancellation may not be had because of a unilateral mistake, unless it appears that there was some special ground accompanying or inducing it, such as fraud—which may have consisted of false or fraudulent representations—or that the mistake was brought about by the conduct of the other party, as where one of the parties was under an obligation to inform the other of the facts known to him, and failed to do so. A mistake which authorizes a decree of cancellation is not disclosed by proof of a mistake by one of the parties as to the contents of the instrument, or as regards the cost of his performance of the agreement, whether arising from miscalculation or changed circumstances. Nor will relief be accorded because of mistake in estimating the value of the property, without fault on the part of the other party."

Appellant insists that he and Roedenbeck had been close friends for a long time, and that he trusted Roedenbeck. The undisputed evidence showed that there had been passages between them which seldom leave men friends. But accepting appellant's conception of the state of friendship between himself and Herbert Roedenbeck, it still has nothing to do with the rights of the parties. He accepted Christie's offer for his land without any knowledge that Herbert Roedenbeck was in any way connected with the transaction. But even if he had known Roedenbeck was connected with the transaction when he accepted Christie's offer, the mere fact that they were friends would not constitute a fiduciary relationship which would impose the obligation upon Christie and his associates of turning over to appellant the fruits of their industry, enterprise and skill. It is a matter of common knowledge that some men are good traders, and some are not. No one can read the record in this case and remain unaware that Smith and Luckel were good traders. It is by no means certain that had appellant been in Houston with the knowledge that Christie and his associates had that he would have had such a standing and reputation as a trader, or such skill and knowledge in trading in oil rights, that he could have made any such trade with the Humble Company as did Smith and Luckel. And appellant seems not to have proved that there was a market value for his land whereby, without effort, ingenuity and skill he could have leased his property for a fraction of what Christie and associates got. That appellant knew there were prospects of an oil field on his land appears from a letter written by him April 2, 1935 to Herbert Roedenbeck; but if he had not so known, the result would be the same under his acceptance, made as pointed out. This is not a case where the principle of a partial disclosure required a fuller or more complete disclosure; there was nothing done or said calculated to induce appellant not to investigate the value of his land for oil value.

Appellant has filed original and reply briefs containing some three hundred pages discussing numerous authorities. But since we take the view that he failed as a matter of law to submit evidence which showed any fraudulent concealment, it would serve no useful purpose to further extend this opinion.

What we have said necessarily disposes of the cause of action asserted by appellant against appellee, The City National Bank of Houston, Texas, whom appellant concedes to have the standing of a bona fide lien-holder without notice of the equities asserted by appellant. In his action appellant seeks to force the Bank to proceed first against other security that it holds for a debt owed it by Luckel, and secured by some of the consideration given by the Humble Company for the lease of the N.E. quarter of Section 63. So, if appellant is not entitled to prevail against Luckel, he obviously cannot assert rights in the security which Luckel has given the bank.

The judgment of the trial court is affirmed.

Affirmed.