## GOODRICH v. FERRIS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 120.   Argued March 19, 22, 1909.—Decided May 17, 1909.

The mere fact that a constitutional question is alleged does not suffice to give this court jurisdiction of a direct appeal from the Circuit Court if such question is unsubstantial and so clearly devoid of merit as to be clearly frivolous. *Farrell* v. *O'Brien*, 199 U. S. 100.

A probate proceeding by which jurisdiction of the probate court is asserted over a decedent's estate for the purpose of administration is in the nature of a proceeding *in rem*, as to which all the world is charged with notice; the law of California conforms to this rule.

Even though the power of the State to prescribe length of notice be not absolute, a notice authorized by the legislature will only be set aside as ineffectual on account of shortness of time in a clear case. *Bellingham Bay Co.* v. *New Whatcom*, 172 U. S. 314.

Whether or not a State can arbitrarily determine by statute the length of notice to be given of steps in the administration of estates in the custody of its courts, ten days' notice for the settlement of the final accounts of an executor and action on final distribution is not so unreasonable as to be wanting in due process of law under the Fourteenth Amendment; and so *held* that the contention that §§ 1633 and 1634 of the Civil Code of California prescribing such length of notice are unconstitutional as depriving a distributee of his property without due process of law is without merit. *Roller* v. *Holly*, 176 U. S. 398, distinguished.

Writ of error to review 145 Fed. Rep. 844, dismissed.

THE facts are stated in the opinion.

*Mr. John G. Johnson*, with whom *Mr. Henry Arden*, *Mr. Tyson S. Dines* and *Mr. L. Sidney Carrère* were on the brief, for appellant:

The notice of final settlement and distribution posted for ten days in San Francisco, did not constitute due process of law as to appellant, who was and is a citizen and resident of

the State of New York. *Hovey* v. *Elliott,* 167 U, S. 409, 447; *Chicago &c. R. R.* v. *Chicago,* 166 U. S. 232; *Galpin* v. *Page,* 18 Wall. 350; *Smyth* v. *Ames,* 169 U. S. 466; *Davidson* v. *New Orleans,* 96 U. S. 97; *Hagar* v. *Rec. Dist.,* 111 U. S. 712.

In *Roller* v. *Holly,* 176 U. S. 398, five days' personal service on a defendant residing in Virginia was made of a process issued in Texas, and the court in holding it insufficient said that a man is entitled to some notice before he can be deprived of his liberty or property is an axiom of the law to which no citation of authority would give additional weight. It is manifest that the requirement of notice would be of no value whatever, unless such notice were reasonable and adequate for the purpose. Citing *Davidson* v. *New Orleans,* 96 U. S. 97; *Hagar* v. *Reclamation Dist.,* 111 U. S. 701, 712.

The notice, even if it had been served upon him personally, would not have given appellant an opportunity to make a proper appearance in court, and due process of law has been repeatedly interpreted by this court to mean not only that a party shall have notice, but that he shall have a reasonable and fair opportunity of being heard. *Hagar* v. *Reclamation Dist.,* 111 U. S. 722.

*Mr. J. W. Dorsey* and *Mr. Henry E. Davis,* with whom *Mr. Henry Ach* was on the brief, for appellees:

No question of a Federal nature is involved in this case. It is not a matter of National concern whether or not succession in cases of intestacy shall be determined under the ancient rules of the civil, the common, or the Scotch law, or through restricted and arbitrary rules of the local government. Who are heirs of a deceased person is determined and declared by statute. As the heir takes by the grace of the State, he can only take to the extent and under the procedure established by the State; which has entire freedom of choice as to the selection of persons who shall stand as heirs at law or beneficiaries of a decedent, intestate or testate, as well as the methods and procedure by and through which succession is

·effected. No fundamental rights are involved in probate proceedings. In matters of this sort, the power to limit involves the power to dispense with limitations. *Allen* v. *Georgia,* 166 U. S. 138; *Hovey* v. *Elliott,* 167 U. S. 409; *Wilson* v. *North Carolina,* 169 U. S. 586.

The probate jurisdiction of the Superior Court is essentially a jurisdiction under the control of the state legislature which the law-making power may enlarge or restrict, and it necessarily follows that opportunity to be heard, accorded by the statute of the State controlling the subject-matter, is sufficient to constitute due process of law. *Lent* v. *Tillson,* 72 California, 404.

As said by Mr. Chief Justice Waite, due process of law is process according to the law of the land. This process in the States is regulated by the law of the State. *Walker* v. *Sauvinet,* 92 U. S. 90.

It necessarily follows, that if any notice is given, or its service made, in pursuance of the requirements of the statute, it cannot be violative of any inherent or constitutional right of the persons affected thereby, and hence must be in accord with the law of the land, and amount to due process of law. *Estate of Davis,* 136 California, 590, 596; *Wulzen* v. *Board of Supervisors,* 101 California, 15, 22; *Burnam* v. *Commonwealth,* 1 Duv. (S. C.) 210; *Shepherd* v. *Ware,* 46 Minnesota, 174; *Taylor* v. *Judges of Court,* 175 Massachusetts, 71; *Dillon* v. *Heller,* 39 Kansas, 607; *In re Empire City Bank,* 18 N. Y. 199, 216.

The sufficiency of the notice must be determined in each case from the particular circumstance of the case in hand. *Davidson* v. *New Orleans,* 96 U. S. 97.

The objects of probate proceedings are to administer, settle and distribute the estates of deceased persons, and our system contemplates that these objects shall be accomplished with reasonable dispatch—that the administration shall be speedily accomplished, and closed, and the estate devolve to a new and competent ownership. *Maddock* v. *Russell,* 109 California, 422, 423; *Estate of Moore,* 72 California, 342; *Estate of*

*Davis,* 136 California, 596; *Carran* v. *O'Calligan,* 125 Fed. Rep. 663; *Hamilton* v. *Brown,* 161 U. S. 256.

The State has provided a complete and effective probate jurisdiction. The world must move on and those who claim an interest in persons or things must be charged with notice of their status and condition and of the vicissitudes to which they are subject. *Townsend* v. *Eichelberger,* 38 N. E. Rep. 207, 208; *De Mares* v. *Gilpin,* 24 Pac. Rep. 568, 572; *Merchants' Nat. Bank* v. *Spates,* 23 S. E. Rep. 683, 685; *Naddo* v. *Barden,* 47 Fed. Rep. 787; *Manning* v. *San Jacinto Tin Co.,* 9 Fed. Rep. 737; *Rudland* v. *Mastick,* 77 Fed. Rep. 688; *Robbins* v. *Hope,* 57 California, 495.

A person is conclusively presumed to know the state of his own title to property. *Cobb* v. *Wright,* 43 Minnesota, 85; *Robbins* v. *Hope,* 57 California, 495. See also *Townsend* v. *Eichelberger,* 38 N. E. Rep. 207; *De Mares* v. *Gilpin,* 24 Pac. Rep. 568; *Rudland* v. *Mastick,* 77 Fed. Rep. 688; *Case of Broderick's Will,* 21 Wall. 503; *Davidson* v. *New Orleans Board,* 96 U. S. 97, 105; *Hurtado* v. *California,* 110 U. S. 516, 533; *State* v. *Boswell,* 4 N. E. Rep. 677; *Wilson* v. *North Carolina,* 169 U. S. 586.

MR. JUSTICE WHITE delivered the opinion of the court.

Upon demurrers, the court below dismissed the bill filed by Goodrich, the appellant, for want of equitable jurisdiction to grant the relief which was prayed. 145 Fed. Rep. 844. To review that decree this appeal direct to this court is prosecuted. Jurisdiction to review is challenged. That question therefore at the outset requires attention.

To clarify the issue for decision, instead of reciting the allegations of the bill in the order in which they are therein stated, we shall briefly recapitulate the facts alleged in their chronological order, in so far as essential to be borne in mind for the purpose of the question of our jurisdiction.

In February, 1886, Thomas H. Williams, a resident of California, died in San Francisco, leaving as his lawful heirs four

sons, viz., Sherrod, Thomas H., Jr., Percy and Bryant, and one daughter, Mary, who was the wife of Frank S. Johnson. The wife of the deceased and the mother of his children had died before him. Williams left an estate of large value, composed principally of real property. Shortly after his death, on April 2, 1886, in the court having probate jurisdiction in San Francisco, a last will and codicil thereto of Williams were duly admitted to probate. Leaving out of view certain bequests of personal property and small legacies in money, the estate was principally disposed of as follows: The title of the property was vested in the executor and trustee named in the will, George E. Williams, a brother of the deceased, for the purpose of making the distribution which the will provided. To one of the sons, Sherrod, nothing was given. It was provided that the sum of $50,000 should be absolutely vested in the son Percy, that $200,000 should "be set aside absolutely" for the benefit of the daughter Mary, wife of Johnson, and that $100,000 should be set aside for the benefit of each of the sons, Thomas H., Jr., Percy and Bryant. The will, however, provided that the gifts to the children above stated, other than the gift of $50,000, which was to vest absolutely in Percy, were only intended for the use and benefit of the children to whom they were given during their respective lives, with the remainder in fee to the lineal descendants, or if none such, to the surviving brothers or sister, as the case might be. The residuum of the estate was directed to be set aside in equal shares for the benefit of the daughter and two of the sons (Thomas H., Jr., and Percy) during their respective lives, with the remainder in fee as heretofore recited. The will contained the following clause:

"Item 4. When the term of three years after my death, shall have elapsed, unless the executor, herein named, shall for good cause extend it for two years, or in case there be another executor, three of my children, or representatives, shall by writing, extend it for two years, distribution of my estate, shall be made, as herein directed."

Until the setting aside or distribution thus directed the executor was authorized to advance monthly to the daughter the sum of $250, and to each of the three sons $100. The executor was authorized to carry on the business in which the testator was engaged at the time of his death, and extensive powers were conferred in regard to the sale and reinvestment of the property to be set aside for the benefit of the children, etc. George E. Williams qualified as executor and entered upon the performance of his duties.

In 1888 one of the sons, Sherrod, died unmarried and without issue. In the same year Frank S. Johnson, the husband of Mary, the daughter, obtained a decree of divorce against his wife, by which he was awarded the custody of an infant son, Frank Hanson Johnson, the issue of the marriage. In December of the following year Mary, the divorced wife, married George G. Goodrich, and thereafter lived with him in the city of New York. The son Percy was married in August, 1888; a child was born in 1889, but died the year following; and Percy died on October 3, 1890, leaving his widow surviving. Bryant Williams, another son, died in May, 1893, unmarried and without issue. In that year also Mrs. Goodrich, the daughter, died in the city of New York without issue from her marriage with Goodrich, leaving her husband surviving.

In the nearly eight years which supervened between the death of the father and the death of Mary, the daughter, the latter undoubtedly received from the executor of the estate of the father, by way of revenue or allowance, the provision made for her benefit by the will of the father. By the various deaths it came to pass that at the end of 1893 those entitled to the estate of Williams by the terms of the will, either for life or in remainder, were the surviving son, Thomas H. Williams, Jr., and the infant son of Mary, the daughter, represented by his father, Frank S. Johnson, who had, in 1889, in the proper probate court, been duly appointed the guardian of the estate of such minor.

After the death of Mrs. Goodrich her husband went from

New York to California for the purpose of the interment of the remains of his wife, and while being there a short time undoubtedly met the executor. Goodrich returned to New York, where he continued to reside. In 1896, three years after the return of Goodrich to New York, in the court having jurisdiction over the estate and person of the minor, the guardian Johnson applied for authority to agree with the executor of the estate of Williams on a final distribution of the estate. In making this application no reference was made to the fact of the marriage of Goodrich with the mother of the minor after her divorce. Conforming to the requirements of the California code of procedure, after hearing, the guardian was authorized to make the agreement for final distribution. Simultaneously or thereabouts the executor also filed in the proper probate court a petition asking the authority of the court to pass his accounts and make a final distribution of the estate. Express notice was given to Williams, the surviving son, and to Johnson, the guardian of the minor, and in accordance with the provisions of the California code a publication, by a posting of notice for a period of ten days, was ordered and duly made. On January 5, 1897, after hearing and in view of the consent of the parties, the accounts were finally passed and a full distribution of the estate was made between the parties in interest, that is, 40 per cent of the estate was transferred to the minor, Frank Hanson Johnson, through his guardian, $26\frac{2}{3}$ per cent to Thomas H. Williams, Jr., the son in fee, and $33\frac{1}{3}$ per cent was vested in Williams as trustee for the benefit during life of Thomas H. Williams, Jr.

Nearly three years after the entry of the decree of final distribution, in December, 1899, Williams, the trustee, died, and by proceedings in the Superior Court of the city and county of San Francisco, John W. Ferris was appointed trustee.

More than eighteen years after the death of Williams and the probate of his will, about eleven years from the date of the death of the daughter Mary, the wife of Goodrich, and more than seven years after the passing of the final account of the

executor and the final distribution of the estate by the probate
court, viz., on May 19, 1904, the bill which is here in question
was filed. Ferris, trustee, Williams, the surviving son of the
deceased, and Johnson, as guardian, and his minor son were
made defendants. The facts above recited in various forms of
statement were alleged, and, in substance, it was charged that
the will and codicil of Williams, the deceased, were void be-
cause the absolute power of alienation of the property of the
deceased, contrary to the laws of California against perpetui-
ties, was by the terms of the will suspended for a period of
three years, and not for a period measured by the continuance
of lives in being, and therefore as to all property included in
the trust which Williams, the deceased, attempted to create by
his will he had died intestate, and all his property by reason
thereof vested at his death in his heirs at law. It was averred
that complainant, as heir of his deceased wife, was entitled to
a stated share of her estate. It was charged that all the pro-
ceedings had in the probate court were fraudulent and subject
to be avoided; that in those proceedings the fact of the remar-
riage of the daughter, Mary, and the survivorship of her hus-
band, Goodrich, the complainant, had been sedulously con-
cealed for the purpose of misleading the court; that when
Goodrich was in California, after the death of his wife, he was
notified, as the result of an inquiry made of the executor, that
the death of his wife terminated her interest in the estate of
her father; that the proceedings in the probate court concern-
ing the final accounting and distribution were fraudulently had
for the purpose of depriving the complainant of his interest
in the estate, and it was expressly charged that in those pro-
ceedings the existence of the complainant and his interest in
the estate were concealed. The whole proceedings, it was also
averred, were not only subject to be avoided because of fraud,
but to have been absolutely wanting in due process of law,
because of the absence of express notice to the complainant,
and because the provisions of the statutes of California provid-
ing for notice by ten days' posting were void, because insuffi-

· cient as to a resident of the city of New York, and in consequence repugnant to the due process clause of the Fourteenth Amendment. Without stating the various grounds upon · which the defendants demurred, it suffices to say that the bill having been submitted to the court on the demurrers was, by it dismissed, as we have said, because the court was without jurisdiction in equity to set aside the probate of the will and to reopen upon the grounds alleged in the bill the probate proceeding had conformably to the local law.

It is manifest from the foregoing statement that the only possible ground upon which the assertion that we have jurisdiction by direct appeal to review the action of the trial court can rest is the contention made below that as to the complainant the notice of the hearing in the probate court upon the petition for the settlement of the account of the executor and for the final distribution of the estate of Williams did not amount to due process of law. *Farrell* v. *O'Brien*, 199 U. S. 89, 100, and cases cited. It is equally certain as held in the cited case that the mere fact that a constitutional question is alleged does not suffice to give us jurisdiction to review by direct appeal, if such question is unsubstantial, and so devoid of merit as to be clearly frivolous.

The grounds for the contention that a constitutional question exists are thus stated in the brief of counsel for appellant:

"4. Sections 1633 and 1634 of the Civil Code of California, upon which jurisdiction of the court to make the consent decree of distribution is based, are in contravention of section 1, article VI, of the Constitution of the United States.

"The notice of final settlement and distribution posted for ten days in the city and county of San Francisco did not constitute due process of law as to appellant, who was and is a citizen and resident of the State of New York."

The sections of the California code above referred to are thus set forth in the bill:

"SEC. 1633. When any account is rendered for settlement, the clerk of the court must appoint a day for the settlement.

thereof and thereupon give notice thereof by causing notices to be posted in at least three public places in the county, setting forth the name of the estate, the executor or administrator, and the day appointed for the settlement of the account. If, upon the final hearing at the time of the settlement, the court, or a judge thereof, should deem the notice insufficient for any cause, he may order further notice to be given as may be proper.

"SEC. 1634. If the account mentioned in the preceding section be for a final settlement, and a petition for the final distribution of the estate be filed with said account, the notice of settlement must state those facts, which notice must be given by posting or publication. On the settlement of said account, distribution and partition of the estate to all entitled thereto may be immediately had, without further notice or proceedings."

While various decisions of this court and of the courts of two States are cited in the brief of counsel for appellant under each of the foregoing propositions, none of them are apposite, and indeed, although citing them, counsel have specifically commented upon but one, viz., *Roller v. Holly*, 176 U. S. 398. That case, however, concerned the validity of original process by which the conceded property of a non-resident situate within the jurisdiction of the State of Texas was sought to be subjected to the control of its courts. The proposition which was presented for decision in that case was whether a statutory notice of five days given to a resident of Virginia, requiring him to appear in Texas and defend a suit brought against him to foreclose a vendor's lien upon his land, constituted reasonable and adequate notice for the purpose. Manifestly, that case is not in any particular analogous to the one under consideration, which is a case involving the devolution and administration of the estate of a decedent, a subject peculiarly within state control. *Case of Broderick's Will*, 21 Wall. 503, 519. It is elementary that probate proceeding by which jurisdiction of a probate court is asserted over the estate of a decedent for the purpose of administering the same is in the nature of a pro-

ceeding *in rem,* and is therefore one as to which all the world is charged with notice. And that the law of California conforms to this general and elementary rule is beyond question. *Wm. Hill Co.* v. *Lawler,* 116 California, 359. The distribution of the estate of Williams was but an incident of the proceeding prescribed by the laws of California in respect to the administration of an estate in the custody of one of its probate courts. Under such circumstances, therefore, and putting aside the question of whether or not the State of California did or did not possess arbitrary power in respect to the character and length of notice to be given of the various steps in the administration of an estate in the custody of one of its courts, we hold that the claim that ten days' statutory notice of the time appointed for the settlement of the final account of the executor and for action upon the petition for final distribution of the Williams estate was so unreasonable as to be wanting in due process of law, was clearly unsubstantial and devoid of merit, and furnished no support for the contention that rights under the Constitution of the United States had been violated. As held in *Bellingham Bay Co.* v. *New Whatcom,* 172 U. S. 314, 318, even although the power of a state legislature to prescribe length of notice is not absolute, yet it is certain "that only in a clear case will a notice authorized by the legislature be set aside as wholly ineffectual on account of the shortness of the time."

The jurisdiction to determine this appeal upon the merits being dependent upon the existence of a constitutional question in the record, and the mere averment that such a question was raised below not being sufficient where the alleged Federal question is so wanting in merit as to cause it to be frivolous or without any support whatever in reason, it follows that the appeal must be and it is

*Dismissed for want of jurisdiction.*

Mr. Justice McKenna took no part in the decision of this case.