## In re FOUR SEASONS SECURITIES LAWS LITIGATION.
### M. D. L. Docket No. 55.

United States District Court,
W. D. Oklahoma.

July 10, 1974.

Supplemental Opinion Oct. 2, 1974.
See 64 F.R.D. 325.

Randolph Phillips, pro se.

Arthur F. Mathews, Michael R. Klein, Wilmer, Cutler & Pickering, Washington, D. C., for Jack L. Clark.

William G. Paul, Harry A. Woods, Jr., Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., for Arthur Andersen & Co.

Thomas W. Kelly, Breed, Abbott & Morgan, New York City, for Gordon McCollum, and others.

## OPINION NO. 8

THOMSEN, District Judge.[*]

On December 3, 1973, Randolph Phillips, a resident of New York, mailed to counsel herein and to the Clerk a motion under Rule 60(b), F.R.Civ.P., grounds (1), (2) and (3),[1] for an order granting him relief from the final judgment herein, signed on November 30, 1972, and entered on December 4, 1972. That judgment approved and confirmed the settlement of the M.D.L. 55 class actions and the plan of distribution, and barred the prosecution against the defendants in the class actions or anyone else of all settled claims by any member of the M.D.L. 55 classes, established by the order of September 21, 1972, except by those who had filed timely requests to be excluded from the classes. See Opinion No. 2 herein, 58 F.R.D. 19, at 32–35 (1972).[2] Phillips had not opted out; rather, he had filed a claim, which included a broad release, and subsequently received and deposited the check for the dividend paid thereon. His claim was dated December 18, 1972, and was stamped "received" in Oklahoma City on December 26, 1972.

On March 25, 1974, Phillips amended his motion: "(1) to limit the relief sought by him to that part of the judgment dismissing the claims against defendant Jack L. Clark and so as to exclude said Clark from any of the benefits of that judgment and to exclude said claimant from that judgment with respect to his claims against Clark and as set forth in Phillips v. Clark, Civil Action 73–2690, USDC SDNY;[3] and thereby

---

* Of the District of Maryland, sitting by designation.

1. Rule 60. *"Relief from Judgment or Order*
" * * * *

"(b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. * * * *"

2. Opinion No. 2 contains a history of the Four Seasons companies, of the Chapter X proceedings involving those companies, of the M.D.L. 55 proceedings up to and including the judgment entered on December 4, 1972, the evidence and arguments presented at the hearing on approval of the settlement, and the reasons for the approval. The findings of fact and the discussion in that opinion will not be repeated, but will be adopted by reference.

3. That action by Phillips against Clark et ux., which was filed on June 15, 1973, was transferred by the Judicial Panel on Multidistrict Litigation to this Court on March 18, 1974, for coordinated or consolidated

eliminating all other defendants from the scope of said Rule 60(b) motion;" and "(2) for leave to file out-of-time claimant's request for exclusion from the classes in the class actions herein * * *".

On March 28, 1974, a hearing was held, at which Phillips testified, argued the law and the facts, and indicated that he might wish to raise additional points.

On April 13, 1974, Phillips mailed to counsel and to the Clerk a motion under Rule 60(b)(4), (5) and (6), for an order granting him relief from the final judgment.[4]

The contentions upon which Phillips relies may be summarized as follows: that during the M.D.L. 55 proceedings Clark and other defendants denied the charging averments of the complaints and denied any wrongdoing, but on June 4, 1973, Clark plead guilty to a conspiracy count in an indictment filed on December 20, 1972, based upon essentially the same acts;[5] that the indictment and plea were a "surprise" to Phillips, Rule 60(b)(1), and constituted "newly discovered evidence", (b)(2); that the withholding by the defendants of their "guilty knowledge of the facts" until after the settlement constituted "fraud, misrepresentation, or other misconduct" and "fraud upon the court", (b)(3); that the alleged failure to serve "indi-

vidual notice" on Phillips rendered the judgment "void" as to his claims, (b)(4); that it is no longer equitable that the judgment should have prospective application, (b)(5); that relief from the judgment is necessary to accomplish justice with respect to the claims against Clark and "his fellow partners in crime", (b)(6); and that Phillips should be excused for not having opted out because he had been ill since December 1970.

### Facts

The history of the Four Seasons companies and their financing is set out in Opinion No. 2, 58 F.R.D. at 21 et seq.

Phillips is 63 years of age, a graduate of Columbia University. He is not a member of the bar, but has "done a tremendous amount of study" in the libraries of the various lawyers for whom he has worked as consultant. He has acted as his own counsel in other proceedings, including Phillips v. Bradford, 228 F. Supp. 397 (S.D.N.Y.1964), in which he challenged unsuccessfully a court approved settlement. He considers himself reasonably experienced in securities fraud matters.[6] He is a sophisticated investor and speculator, and a shrewd witness.

---

pretrial proceedings. 373 F.Supp. 975. The defendants had filed a timely answer therein, raising various defenses. On June 17, 1974, Phillips mailed to the attorneys for the Clarks and to the Clerk of this Court a motion for summary judgment in that case.

4. For the contents of Rule 60(b), see n. 1, above. Phillips has also filed legal memoranda and supplemental affidavits in support of his motions. The attorneys for Clark, for Arthur Andersen & Company and for certain other defendants have filed memoranda opposing the motions, supported by affidavits.

5. Of the seven other persons indicted, two, former executives of Walston & Co., Inc., which is now bankrupt, plead guilty; one defendant plead nolo contendere; three, two of whom were connected with Arthur Andersen

& Company, were acquitted by a jury; and the jury was unable to reach a verdict with respect to the eighth defendant, who was also connected with Arthur Andersen & Company.

6. He has been a newspaper reporter in the field of finance, a special consultant to the Committee on Interstate Commerce of the United States Senate, an assistant to the Chairman of the Allegheny Corporation, and has represented stockholders in a reorganization under the Public Utility Holding Act and bondholders of the Baltimore & Ohio Railroad in the District of Maryland. He was Chairman of the Investors Diversified Services, Inc., Finance and Law Committee. See 228 F.Supp. at 401. He has been engaged in a number of SEC cases, and has assisted counsel in actions against officers, directors and brokers.

His first transactions in Four Seasons stock appear to have been a short sale of 100 shares at 86½ per share on January 15, 1969, and another short sale of 99 shares at 110⅛ on January 31. His brother Darius made short sales on January 13, 24 and 31 of 200, 300 and 500 shares respectively. Both bought Four Seasons stock at higher prices in May 1969 to cover those short sales. During the summer of 1969 Darius Phillips, represented by an attorney, filed an action in the Southern District of New York against Jack L. Clark et al. Sometime before March 25, 1970, Randolph Phillips prepared or assisted in the preparation of an amended complaint to be filed in that action, in which he, appearing pro se, would join his brother Darius in asserting claims against Clark et al. for violating § 10(a) and (b) of the Securities Exchange Act of 1934 and certain rules of the American Stock Exchange (Amex); those claims arose out of the short sales referred to above, the purchases made to cover them, and additional transactions thereafter by both Phillips and his brother Darius.

The amended complaint was not filed, as a result of several discussions Phillips had with an attorney associated with Abraham Pomerantz, Esq., who was then representing Clark; a counterclaim was threatened because of questions asked Clark by Phillips at a meeting of the New York Society of Analysts. The action filed by Darius was dismissed with prejudice by stipulation in March 1970. An effort was made, in which Randolph Phillips joined, to set aside the dismissal, but it was affirmed by the Second Circuit, Docket No. 71–1156 (June 22, 1971).

Meanwhile, between October 5, 1969, and March 2, 1970, Phillips had been engaging in transactions in Four Seasons stock, with a net loss, including losses as a result of short sales, of $93,442.49. His last purchase was on March 2, 1970, through Halle & Stieglitz, New York brokers, in whose name the shares owned by Phillips were registered. His last sale was on March 11, 1970.[7]

On April 30, 1970, Amex stopped trading in Four Seasons stock. On May 12, 1970, the SEC ordered the first of a series of 10-day suspensions in trading. The initial class actions against Clark et al. were filed in the Southern District of New York in May and June, 1970. The Chapter X proceeding was instituted in the Western District of Oklahoma on June 26, 1970. On May 26, 1971, the Judicial Panel on Multidistrict Litigation transferred the class actions and certain individual actions to the Western District of Oklahoma for coordinated or consolidated pretrial proceedings. 328 F. Supp. 221.

The proceedings in M.D.L. 55 are set out in detail in Opinion No. 2 herein, 58 F.R.D. at 28–42. Chapter X proceedings were being conducted simultaneously in this Court. See 58 F.R.D. at 26–28. Elaborate discovery was conducted in the M.D.L. 55 actions in an effort to determine what class or classes should be established. The attorneys for the class plaintiffs obtained a very large number of documents from the defendants in the several class actions,[8] including the documents in six trunks which Arthur Andersen & Company had turned over to the Fort Worth office of the SEC. On May 1–2, 1971, the depositions of de-

7. The dates are from the proof of claim which Phillips filed in this M.D.L. 55 class action proceeding. In the action Phillips filed against Clark et ux., see n. 3, above, Phillips alleged that his last transaction was on May 3, 1970, which was a Sunday. This court finds that the dates given in the proof of claim, under penalty for a fraudulent claim, were the true dates. No evidence has been offered to the contrary.

8. There was a total of 40 defendants in the several actions, counting as one the several hundred individual partners of Arthur Andersen & Company throughout the world, whom one or more attorneys proposed to name as a defendant class.

fendants Clark and Andrews[9] were taken in open court before me. The difficulty of establishing appropriate classes was evident, and several hearings were held on the problem. See 58 F.R.D. at 29–31, 38–39 and 41.

During the summer of 1972, after extensive negotiations, the attorneys for the plaintiffs in the M.D.L. 55 cases which had been brought as class actions against various defendants, together with the attorney for the Trustee in the Chapter X proceedings, who had asserted claims against Clark and some of the other defendants, negotiated a joint settlement with all of the defendants. That settlement was submitted to me as the judge handling the M.D.L. 55 cases at a hearing on September 21, 1972.[10] For reasons stated in 58 F.R.D. at 31–32, including n. 30, and in the order of September 21, 1972, this court found and determined that for the purpose of effectuating the proposed settlement, the prerequisites set out in Rule 23(a) and (b)(3) were met with respect to each of the two classes established by the order. The order directed James R. Tolbert, III, who was the Trustee in the Chapter X proceedings, to mail, on or before October 2, 1972, notice and proof of claim forms to each member of the classes whose identity and address were known to him or whose name was furnished to him by any of the parties, at such member's last known address.[11]

The Trustee had lists of all persons who at any time had been registered holders of stock of any of the Four Seasons companies; he also had the addresses of all persons who had theretofore filed claims as Class G–Creditor ·

Stockholders in the Chapter X proceedings, which included stockholders whose stock was held in street names.[12] This court directed him to send and he sent notices to all of the registered stockholders and to all persons who had filed Class G claims in the Chapter X proceedings. As instructed by the court, the Trustee also requested all the brokerage houses listed as stockholders (including Halle & Stieglitz and another broker through whom Phillips had previously dealt) either (a) to send him the names of the beneficial owners of shares registered in the name of the broker, so that the Trustee could send the notice to such beneficial owners, or (b) to obtain additional copies of the notice from him, so that the brokers could themselves get in touch with their customers and advise them of the situation.

The notice included a statement of the right of each member of the classes to elect to be excluded therefrom and the procedure he should follow if he decided to do so. It stated clearly that anyone who wished to be excluded from the classes should sign and return not later than November 1, 1972, a written request to be excluded.

Pursuant to Rule 23(c)(2) F.R.Civ. P., the court found that the notice to be given to members of the classes as directed by the order was the best notice practicable under the circumstances, that adequate provision had been made for individual notice to all members of the classes who could be identified through reasonable effort, and that such notice met all requirements of Rule 23. The court adheres to that finding and conclusion.

---

9. Andrews had served as counsel for Clark and for other individuals and entities involved in the M.D.L. 55 and/or Chapter X proceedings.

10. It was also submitted to the judge handling the Chapter X proceedings and appropriate action was taken therein. The settlement was approved and confirmed therein on November 21, 1972, after a hearing.

11. The order also directed the Trustee to cause notice to be published in the national edition of The Wall Street Journal.

12. Some 6250 stockholders had already filed claims in the Chapter X proceedings in the total amount of about $116 million.

Halle & Stieglitz, in whose name the stock beneficially owned by Phillips was registered, had requested the Trustee on May 4, 1972, to send them thirty forms on which Class G claims could be filed in the Chapter X proceedings. In the same month, May, 1972, the Trustee received a terse note which read as follows: "Re Four Seasons Nursing Homes: Please send four claim forms to Randolph Phillips, 3 East 78th Street, New York, N.Y. 10021". The note did not indicate that Phillips was himself a stockholder of any of the Four Seasons companies or why he wanted the forms. The Trustee sent the forms to Phillips promptly, but Phillips did not file a Class G claim in the Chapter X proceedings until December, 1972, at or about the same time he filed his claim in the M.D.L. 55 proceedings.

Phillips received an M.D.L. 55 notice and form of proof of claim from some source in time to have opted out if he had elected to do so. Phillips does not deny that he received the notice, but states that because of a heart condition, which he had had since December 1970 and which caused him to be in a hospital for ten days during September, 1972, he did not read the notice until some unspecified date before December 18, 1972, when he prepared and dated his M.D.L. 55 claim for $93,442.49. He mailed it to Oklahoma City, where it was stamped "received" on December 26, 1972.[13]

A hearing on approval of the settlement was held in Oklahoma City on November 16–17, 1972. The proceedings at that hearing are set out in 58 F.R.D. at 35–42. Over 2500 claims, for a total of more than $22 million, had been filed before the hearing. Thirteen timely requests for exclusion had been filed.[14] Eight stockholders, with total claims of some $300,000, represented by one attorney, objected to the settlement and filed an elaborate memorandum, raising some of the same points now argued by Phillips. The attorney for the objectors was heard at length; his arguments were answered by the attorneys for various parties; all of the points raised by the objectors and some points raised by the court sua sponte were argued by counsel and were considered by the court in the opinion confirming the settlement, see 58 F.R.D. at 36–41.

Phillips did not opt out, object to the settlement, or appeal. His M.D.L. 55 claim was filed in Oklahoma City on December 26, 1972, before the time for appeal from the judgment approving the settlement expired on January 3, 1973, and before the settlement fund of $8.5 million, which had been paid to an escrow agent during December, 1972, was paid over by it to the paying agent during January, 1973. The calculation and payment of the M.D.L. 55 distribution was delayed by the number of the claims (over 7200 filed for a total amount of over $125 million) and complications with respect to some of them which were disputed for various reasons and required approval, modification or disallowance by the court after notice and consideration of memoranda. The order directing distribution was signed on November 30, 1973.

A check in the amount of $4,672.11 (representing a 5% distribution) was mailed to Phillips on December 7, 1973; he deposited the check on January 7, 1974.[15]

---

13. As noted above, he filed his belated claim in the Chapter X proceedings on or about the same day. On another unspecified date before December 18, 1972, Phillips had discussed the matter with one of the plaintiffs' attorneys in the class actions, named in the notice.

14. Including the request of the Bank of America, Trustee, see 493 F.2d 1288, affirming an unpublished opinion of this court;

one untimely request (by Kleinman) was later denied, see 60 F.R.D. 598; and the special situation of the State of Ohio has been recognized by this court, 59 F.R.D. 667, and is now on appeal.

15. He had previously received the shares of the Anta Corporation distributed to the Class G–Creditor Stockholders in the Chapter X proceedings.

*Discussion*

**I**

*The Interrelation of Rule 60(b) and Rule 23*

In this case Rule 60(b) and Rule 23 must be read and considered together.

▮ Rule 60(b), the relevant portions of which are set out in n. 1, above, should be liberally construed to enable a court to vacate a judgment when such action is appropriate to avoid injustice, in the light of all the facts. But an application for relief under its provisions must be clearly substantiated by adequate proof. Consolidated Gas & Equipment Co. of America v. Carver, 257 F.2d 111, 114 (10 Cir. 1958); Thomas v. Colorado Trust Deed Funds, Inc., 366 F.2d 136, 139 (10 Cir. 1966); Wilkin v. Sunbeam Corporation, 466 F.2d 714, 717 (10 Cir. 1972).

▮ Rule 23 is designed to avoid a multiplicity of lawsuits while protecting the substantive rights of plaintiffs and defendants. The provisions of Rule 23 (as amended effective July 1, 1966) are designed to provide due process and, at the same time, achieve finality in class litigation.[16] Due process in a class action under Rule 23(b)(3) requires both adequate notice and adequate representation. Mullane v. Central Hanover Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

▮▮ The reasons advanced by Phillips in support of his motions under Rule 60(b) must be considered in the light of the purposes and provisions of Rule 23. A too liberal application of Rule 60(b) in class actions would undermine the finality of judgments entered therein and would discourage settlement of such actions. Defendants will be loath to offer substantial sums of money in compromise settlement of class actions unless they can rely on compliance with the provisions of Rule 23 to bind class members. It has long been recognized that courts favor the settlement of controversies. Williams v. First National Bank, 216 U.S. 582, 595, 30 S.Ct. 441, 54 L.Ed. 625 (1910); Hennessy v. Bacon, 137 U.S. 78, 85, 11 S.Ct. 17, 34 L.Ed. 605 (1890). Fair compromise settlements, after notice and approval by the court, as required by Rule 23(e),[17] are particularly important in complex, multi-party litigation which is likely to require many months of court time over a period of years.

**II**

*Notice*

▮ "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Milliken v. Meyer, 311 U.S. 457 [61 S.Ct. 339, 85 L.Ed. 278]; Grannis v. Ordean, 234 U.S. 385 [34 S.Ct. 779, 58 L.Ed. 1363]; Priest v. Las Vegas, 232 U.S. 604 [34

---

16. Since the M.D.L. 55 class actions fall within Rule 23(b)(3), the provisions of Rule 23(c)(2) apply.

Rule 23(c)(2) provides:

"(2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel."

17. Rule 23(e) provides:

"(e) *Dismissal or Compromise.* A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

S.Ct. 443, 58 L.Ed. 751] ; Roller v. Holly, 176 U.S. 398 [20 S.Ct. 410, 44 L.Ed. 520]. The notice must be of such nature as reasonably to convey the required information, Grannis v. Ordean, *supra,* and it must afford a reasonable time for those interested to make their appearance, Roller v. Holly, *supra,* and cf. Goodrich v. Ferris, 214 U.S. 71 [29 S.Ct. 580, 53 L.Ed. 914]. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. \* \* \*" Mullane v. Central Hanover Trust Co., 339 U.S. 306, at 314–315, 70 S.Ct. 652, 657, 94 L.Ed. 865. "The Court [in *Mullane*] recognized the practical impossibility of giving personal notice in some cases, such as those involving missing or unknown persons." Schroeder v. City of New York, 371 U.S. 208, 212, 83 S.Ct. 279, 282, 9 L.Ed.2d 255 (1962).

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort". Eisen v. Carlisle & Jacquelin, —— U.S. ——, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

■ This court has found that the notice given to members of the classes pursuant to the order of September 21, 1972, as set out in the statement of facts above, was the best notice practicable under the circumstances and that individual notice was sent to all members of the classes who could be identified through reasonable effort. This court concludes that such notice met all the requirements of Rule 23, and the requirements of due process set out in *Mullane,* quoted above.

■ Importantly, Phillips does not deny that he received the notice from some source in time to have exercised his right to opt out under the terms of the order and notice.[18] Neither due process nor Rule 23, as interpreted in *Eisen* and other cases, requires that a notice be in any particular form, nor that the notice must be read in order to be adequate. This court reiterates its conclusion that the notice was adequate. There is no merit in Phillips' contention under Rule 60(b)(4) that the judgment was void for lack of proper notice.[19]

### III

#### *Adequacy of Representation*

■ Following the hearing on November 16, 1972, at which an attack was made on the adequacy of representation, generally similar to the attack made by Phillips, this court, for the reasons stated in Opinion No. 2 herein, 58 F.R.D. at 40, 41, held that the representation was adequate and met the requirements of Rule 23(a)(3) and (a)(4).[20] After considering the evidence and arguments presented by Phillips, the court adheres to that finding and conclusion. This case is distinguishable from Hansberry

---

18. His excuse for not having done so was his desire to avoid all possible emotional stress because of a heart condition, which he had had since December, 1970. However, in May, 1972, he sent to the Trustee in the Chapter X proceedings a request for "four claim forms", not stating that he was a stockholder nor what his interest was. Phillips also testified that he was in a hospital for ten days in September, 1972, but he has not shown that he was not able to file a timely election to opt out. He did file a timely claim in the M.D.L. 55 proceedings in December, 1972. He did not at that time seek permission to file a late election to opt out. If he had done so, the application could have been considered before the period for appeal from the judgment approving the settlement had expired and before the escrow agent holding the settlement fund turned it over to the paying agent.

19. In view of this holding, it is not necessary to consider the effect of the notice published in The Wall Street Journal.

20. That "(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L. Ed. 22 (1940), where the substantial interests of the representatives and of the persons whom they were deemed to represent were not the same. 311 U.S. at 44, 45, 61 S.Ct. 115.[21]

Phillips argues that "[t]he failure of the plaintiffs to pay the $25,000 or more 'cost of notice' and ·its payment by defendants is conclusive evidence that their relationship was not 'truly adversarial' as required by the Supreme Court of the United States, and requires the dismissal of the class actions herein and vacatur of the judgment", citing *Eisen*, supra.

In fact, the settlement agreement and the order of September 21, 1972, provided that: "[t]he sum of $25,000 shall be forthwith advanced to the Trustee by the consenting defendants in proportion to the cash contributions to be made by them or on their behalf to the Settlement Fund. Such sums shall be consolidated in a single check payable to the Trustee in order to preserve the confidentiality of the several contributions. The sums so advanced shall be credited against contributions due to be made by said defendants to the Class Settlement Fund. In the event the settlement is not finally approved, any amounts so advanced and not actually used by the Trustee for the notice and claims processing contemplated hereby shall be reimbursed forthwith to the defendants, and the amounts not reimbursed may be taxed as costs upon ultimate termination of these class actions. In the event the sum advanced is not sufficient to reimburse the Trustee in full for all expenses incurred, the consenting plaintiffs shall advance to him on demand such additional amounts as may be necessary, which may be similarly taxed as costs."

 This arrangement was one provision of an arms-length settlement in bitterly contested cases. It was not con-trary to anything held in *Eisen*, and does not prove that the relationship between the attorneys for the plaintiffs and the attorneys for the defendants was not truly adversarial.

Phillips has shown no basis for declaring the judgment void under Rule 60(b)(4).

## IV

### *Rule 60(b)(1), (2) and (3)*

Phillips argues that because Clark and other defendants in the M.D.L. 55 cases denied the charging averments therein and did not admit any wrongdoing, the subsequent indictment and guilty plea by Clark were a "surprise" to Phillips within the meaning of Rule 60(b)(1) and "newly discovered evidence" (b)(2), and that the withholding by defendants of their guilty knowledge of the facts until after the settlement constituted "fraud, misrepresentation or other misconduct" (b)(3).

The several complaints and amended complaints in the M.D.L. 55 cases alleged losses caused by violations of many sections of the Securities Act of 1933, of the Securities Exchange Act of 1934, and of regulations issued pursuant thereto, by various defendants, usually including Clark; one or more of the complaints alleged a conspiracy ab initio. The answers of Clark and other defendants denied those averments, and counsel for the plaintiffs embarked on extensive discovery. Plaintiffs had access to the six trunks of material delivered by Arthur Andersen & Company to the SEC, as well as to material which was still in the possession of the defendants. Phillips has cited no instance of any evidence withheld or sought to be withheld by a defendant, and the court knows of none, except three instances in which various defendants sought rulings from the court with respect to the discoverability of specific documents. They were—

---

21. The present motion is also distinguishable from the motion of the State of Ohio herein, discussed in 59 F.R.D. 667, particularly at 680–683.

1. Transcripts of testimony taken in a private investigation by the SEC and documents given to the SEC in connection therewith. Whether these were discoverable was a novel question; the court decided in favor of discovery in an opinion reported in 54 F.R.D. 527, after obtaining a memorandum from the SEC, as amicus curiae.

2. Certain documents in the file of Andrews, who had been counsel for Clark. These documents were supplied when Clark waived any claim of privilege.

3. The manuals and other material furnished by Arthur Andersen & Company to its partners and employees to guide them in their investigation and reports. Andersen argued that these were trade secrets, which would be of interest to their competitors. After an examination of the manuals by the attorneys who sought their discovery, Andersen supplied all sections and pages included in a reduced demand, subject to a protective order, and copies were delivered to the attorneys for the plaintiffs.

Discovery depositions of Clark and Andrews were taken in open court on May 1-2, 1972. They answered the questions asked them by the attorneys for the plaintiffs and produced documents which were used by some of the attorneys for plaintiffs in support of their conspiracy ab initio argument. See generally, Opinion No. 2 herein, 58 F.R.D. 19, particularly pp. 37, 38, including n. 44.

Most important in connection with the "newly discovered evidence" argument made by Phillips is the fact that counsel for the M.D.L. 55 plaintiffs had copies of the Advisory Report of the SEC on the Proposed Plan of Reorganization, dated March 16, 1972, which was filed in the Chapter X proceedings. That report discussed at length many of the acts and omissions upon which the later indictment was based. See 58 F.R.D. at 21–26. Other facts forming the basis for

charges in the indictment were developed during the discovery in the M.D.L. 55 cases.

All counsel and the court were aware not later than June, 1972, that the matter was under investigation by a grand jury in the Southern District of New York. That was three months before counsel agreed upon the settlement which was submitted to the court and to the members of the classes. See generally, 58 F.R.D. at 21 (where there was a reference to the grand jury proceedings), 32, 35 et seq. There was no "fraud upon the court", as argued by Phillips.

At the hearing on confirmation of the settlement, a great deal of evidence, including the report of the SEC, was introduced. The attorney for the eight members of the classes (with claims of about $300,000) who objected to the settlement was heard. Orally and in an elaborate brief which he filed he referred to many of the facts now relied upon by Phillips. See 58 F.R.D. at 21 and 35, including n. 4 and n. 39.

It is not necessary that Phillips himself knew these facts at the time the settlement was made and approved; it is sufficient that they were known by the attorneys for the class plaintiffs, who adequately represented Phillips.

 Clark's plea to the indictment came after the settlement was approved. "Newly discovered evidence", as that term is used in Rule 60(b)(2) means evidence in existence at the time of the trial or of the judgment, not future events. Ryan v. United States Lines Company, 303 F.2d 430, 434 (2 Cir. 1962); Brown v. Pennsylvania Railroad Company, 282 F.2d 522, 526, 527 (3 Cir. 1960); Hughes v. Sanders, 287 F.Supp. 332, 334 (E.D.Okl.1968).

Contrary to a contention made by Phillips, Clark had no fiduciary relationship to the members of the classes at the time the settlement was made and approved. Clark had had a fiduciary rela-

tionship to the Four Seasons stockholders while he was an officer and director of the companies before the Chapter X proceedings; but after a trustee was appointed for the companies in the Chapter X proceedings, and Clark ceased to be an officer or director thereof, his relationship to the persons who were suing him became an adversary and not a fiduciary relationship. As the first Justice Harlan said in Hennessy v. Bacon, 137 U.S. 78, 11 S.Ct. 17, 34 L.Ed. 605 (1890): "He concealed nothing that he was under legal obligation to state. * * * It is the case of the compromise of a disputed claim, the parties dealing with each other upon terms of perfect equality, holding no relations of trust or confidence to each other, and each having knowledge, or having the opportunity to acquire knowledge, of every fact bearing upon the question of the validity of their respective claims. Cleaveland v. Richardson, 132 U.S. 318, 329 [10 S.Ct. 100, 33 L.Ed. 384]. Such a settlement ought not to be overthrown, even if the court should now be of opinion that the party complaining of it surrendered rights that the law, if appealed to, would have sustained. * * *" 137 U.S. at 85, 11 S.Ct. at 19.[22]

There was no such "surprise", "newly discovered evidence", "fraud, misrepresentation or other misconduct" as would justify relieving Phillips from the final judgment approving the settlement.

## V

### Rule 60(b)(5) and (6)

Phillips argues that "it is no longer equitable that the judgment should have prospective application", Rule 60(b)(5). In support of his argument he cites the facts brought out at the hearings on Clark's plea (on June 4, 1973) and sentencing (on September 18, 1973) and states that at no time prior to those dates did he (Phillips) know or did Clark disclose certain facts, particularly the amount of profits Clark and others are alleged to have made. This argument overlooks the facts: (1) that the settlement was a class action settlement; (2) that although the 7000-plus individual members of the classes may not have known those facts, most of the facts, including the amount of the profits made by Clark and others, were developed by counsel for plaintiffs in the course of the M.D.L. 55 discovery, and were known to the attorneys for the plaintiffs in the class actions at the time the settlement was negotiated and approved; (3) that the profits and other facts were urged by counsel for the eight objectors to the settlement in opposition to the settlement; and (4) that they were considered by the court when it approved the settlement. For the reasons discussed throughout this opinion, the court cannot conclude that it is no longer equitable that the judgment should have prospective application.[23]

---

22. There is no evidence that in the M.D.L. 55 proceedings Clark made any statement which comes within the principle stated in the ALI Restatement of Torts, § 529, quoted in Equitable Co. v. Halsey, Stuart & Co., 312 U.S. 410, 61 S.Ct. 623, 85 L.Ed. 920 (1941), upon which Phillips relies, namely: "'A statement in a business transaction which, while stating the truth so far as it goes, the maker knows or believes to be materially misleading because of his failure to state qualifying matter is a fraudulent misrepresentation.' Such a statement of a half truth is as much a misrepresentation as if the facts stated were untrue. * * *" 312 U.S. at 425, 426, 61 S.Ct. at 630.

23. As Dean Pound said in reply to a similar argument in Home Fire Insurance Co. v. Barber, 67 Neb. 644, at 673, 93 N.W. 1024, at 1035 (1903), recently quoted in n. 14 to Bangor Punta Operations, Inc. v. Bangor & Aroostook Railroad Company, ‒‒ U.S. ‒‒, 94 S.Ct. 2578, 40 L.Ed.2d ‒‒ (1974): "A plaintiff must recover on the strength of his own case, not on the weakness of the defendant's case. It is his right, not the defendant's wrongdoing, that is the basis of recovery. When it is disclosed that he has no standing in equity, the degree of wrongdoing of the defendant will not avail him."

If settlements approved in class actions can be set aside because of matters developed in criminal proceedings, it will be difficult if not impossible either (a) to obtain a settlement until all criminal proceedings in process or contemplated have been disposed of, or (b) to conduct discovery proceedings in class actions or individual actions until the criminal proceedings have been concluded. And it may well become more difficult to obtain guilty pleas.

▇▇ Rule 60(b)(6) [24] was intended to cover extraordinary situations. Collins v. City of Wichita, Kansas, 254 F.2d 837, 839 (10 Cir. 1958); Carrethers v. St. Louis-San Francisco Railway Co., 264 F.Supp. 171, 173 (W.D.Okl.1967). The facts of this case, discussed above, do not justify relief under Rule 60(b)(6) in this case.

Moreover, Phillips did not seek permission in December, 1972, to file a late election to opt out. If he had done so, the application could have been considered before the period for appeal from the judgment approving the settlement expired, and before the date on which the escrow agent holding the settlement fund turned it over to the paying agent. The indictment against Clark et al. was filed in New York City on December 20, 1972. The first guilty pleas were entered on January 8, 1973; Clark's guilty

plea was entered on June 4, 1973.[25] Phillips filed his action against Clark et ux. on June 15, 1973. He did not seek to be relieved from the judgment entered herein on December 4, 1972, until he mailed his first motion to the Clerk of this Court and to counsel on December 3, 1973. Thereafter, he received and deposited the check for the dividend on the claim which he had filed herein.

▇▇ These facts make it inequitable for Phillips to be excused for not having opted out because he had been ill since December, 1970, even if he would otherwise have been entitled to such relief, which the court does not find.

In view of the conclusions reached above, it is not necessary to decide whether either laches [26] or ratification [27] would bar the relief that Phillips seeks under Rule 60(b)(1)–(6), nor to decide whether Phillips has sought relief "within a reasonable time", as required by Rule 60(b).

*Rulings*

The motions filed by Phillips seeking relief from the final judgment herein entered on December 4, 1972, and his motion for leave to file an out-of-time request for exclusion from the classes are hereby denied.

---

24. "any other reason justifying relief from the operation of the judgment".

25. The district judge permitted Clark to qualify his plea by stating that the only acts he admitted were acts during April, May and June, 1970, which were after the last transactions by Phillips set out in his M.D.L. 55 claim and in his suit against Clark et ux. This court has given no weight to that qualification in the findings and conclusions stated herein.

26. Misco Leasing, Inc. v. Vaughn, 450 F.2d 257, 260 (10 Cir. 1971).

27. See Maryland Casualty Co. v. Beebe, 54 F.2d 743, 746 (10 Cir. 1931); Whitebird v. Eagle-Picher Company, 258 F.Supp. 308, 311 (N.D.Okl.1966); Mungin v. Florida East Coast Railway Company, 318 F.Supp. 720, 735 et seq. (M.D.Fla.1970), aff'd, 441 F.2d 728 (5 Cir. 1971), cert. den., 404 U.S. 897, 92 S.Ct. 203, 30 L.Ed.2d 175.